CLARK, Justice.*
|tA juvenile in a delinquency proceeding argued the criminal statutes regarding the intentional concealment of a weapon, La. R.S. 14:95(A), and the possession of a handgun by a juvenile, La. R.S. 14:95.8, fail to meet the requirement of strict scrutiny under the state constitutional provision securing the right to keep and bear arms. The juvenile court declared La. R.S. 14:95(A) unconstitutional as applied to juveniles, and found a portion of La. R.S. 14:95.8 should be severed from the statute. Upon review, we find the juvenile court was wrong in both of its rulings. For the reasons that follow, we hold both criminal statutes are constitutional and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
Before its recent amendment, La. Const, art. I, § 11 provided: “The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.” Pursuant to Acts 2012, No. 874, § 1, a proposal to amend this |2provision of the state constitution was submitted to the electors of the state of Louisiana, and was ratified by them in a statewide election held on November 6, 2012. Effective December 10, 2012, La. Const, art. I, § 11 now provides: “The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.” See State v. Draughter, 2013-0914, p. 7-8 (La.12/10/13), 130 So.3d 855, 2013 WL 6474419.
According to the state, six days after the effective date of this new state constitutional provision, on December 16, 2012, the juvenile, J.M., knowingly possessed a handgun on his person, in violation of La. R.S. 14:95.8, and intentionally concealed a weapon on his person, in violation of La. R.S. 14:95(A). Based on these alleged delinquent acts, the state sought to have J.M. adjudged delinquent and filed a petition for the adjudication of delinquency in the juvenile court for East Baton Rouge Parish.
La. R.S. 14:95.8 prohibits the possession of a handgun by a juvenile except under certain exceptions. Subsection A of the statute provides: “It is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of a handgun by a juvenile.” Subsection B of the statute describes the penalties for a first, second, third or subsequent conviction, and the enhanced penalties for a juvenile offender previously adjudged delinquent for a crime of violence. Subsection C describes seven exceptions under which circumstances the prohibition of possessing a handgun will not apply to a juvenile, as follows:
(1) Attending a hunter’s safety course or a firearms safety course;
(2) Engaging in practice in the use of a firearm or target shooting at an established range;
(3) Hunting or trapping pursuant to a valid license issued to him pursuant to the laws of this state;
*857 h(4) Traveling to or from any activity described in Paragraph (1), (2), or (3) of this Subsection while in possession of an unloaded gun;
(5) On real property with the permission of his parent or legal guardian and with the permission of the owner or lessee of the property;
(6) At' such person’s residence and who, with the permission of such person’s parent or legal guardian, possesses a handgun; and
(7) Possessing a handgun with the written permission of such person’s parent or legal guardian; provided that such person carries on his person a copy of such written permission.
Subsection D defines what is meant by the term “handgun.”[1]
La. R.S. 14:95(A) prohibits the illegal carrying of a weapon. Considering the state’s allegations, the only provision of that statute applicable in this case is La. R.S. 14:95(A)(1), which prohibits: “The intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one’s person.”[2]
Counsel for J.M. filed motions to declare both statutes unconstitutional under the new provisions of La. Const, art. I, § 11, arguing the statutes did not pass strict judicial scrutiny. Additionally, counsel argued the effect of the amendment of the constitution invalidated any prohibition restricting the carrying of concealed weapons.
The Office of the Louisiana Attorney General exercised its discretionary right to respond to the constitutional challenge to the statutes and joined with the East Baton Rouge Parish District Attorney in opposing J.M.’s motions (hereinafter preferred to as “the state”).[3] The state responded to the motions, arguing J.M. did not have a right to assert under the state constitution, and, even if he did, the statutes at issue pass strict scrutiny review.
After a hearing and briefing, the juvenile court issued a written opinion. The juvenile court first subjected La. R.S. 14:95.8 to the strict scrutiny required by La. Const, art. I, § 11 and found the state showed a compelling government interest for prohibiting the possession of handguns by a juvenile. The juvenile court explained: “... it is clear that this statute attempts to address a well known [and] studied fact in our society, that the cognitive brain development of minors is not the same as an adult.” Based on this inherent difference between adults and children, the juvenile court found a compelling state *858 interest not only in restricting the possession of handguns from those who lack the maturity to handle them, and for the benefit of the safety of society at large, but also to provide a method of punishment separate from those sanctions imposed on adult criminal offenders. .
After finding a compelling state interest in prohibiting the possession of handguns by juveniles, the juvenile court turned to the second part of the strict scrutiny analysis. The juvenile court considered the factors described in In re: Warner, 2005-1303, p. (La.4/17/09); 21 So.3d 218, 253, to determine whether a statute is narrowly drawn to achieve the compelling government interest and found:
La. R.S. 14:95.8 is neither over-inclusive as to be too broad, nor under-inclusive so as to be too vague, because the statute refers to a specific group, individuals under the age of seventeen. Further, La. R.S. 14:95.8 does not prohibit juveniles from total use and possession of firearms. The statute only places a prohibition on handguns. As previously mentioned, the majority of shootings committed by juveniles are committed with handguns. Therefore, this statute clearly |fiadvances the interest asserted, safety of society.
Despite these findings, the juvenile court nevertheless ruled four of the exceptions found in Subsection C should be severed from the statute, even though J.M. failed to assert any examples of less restrictive means of enforcement. The juvenile court first examined all seven exceptions to the handgun restriction found in Subsection C. The first three circumstances described in the exceptions were approved by the juvenile court, which found juveniles could possess handguns for attending a hunter’s or firearms safety course, engaging in practice in the use of a firearm or target shooting at an established range, or hunting or trapping pursuant to a valid state license. See La. R.S. 14:95.8(0(1-3). As for the remaining four circumstances, without further analysis the juvenile court indicated “... the court does not have the same feeling towards the remaining exceptions: C(4), (5), (6) and (7)” and ordered them severed from the statute. After the four exceptions were severed, the juvenile court found La. R.S. 14:95.8 was narrowly tailored to serve a compelling governmental interest, explaining: “The statute only prohibits a particular. type of firearms (handguns) by a particular group of individuals and further strikes a fine line between the right to bear arms and the protection of individuals in our society.”
As to the prohibition against carrying concealed weapons found in La. R.S. 14:95(A), the juvenile court again found a compelling state interest for the statute “in protecting society from any and all types of violence.” However, the juvenile court did not believe the statute was narrowly tailored. Specifically, the juvenile court found La. R.S. 14:95(A)(1) was “... unconstitutional as it relates to juveniles because there already existfs] a law that restricts juveniles[’] possession of guns, i.e. La. R.S. 14:95.8 ... La. R.S. 14:95(A)(1) as it relates to juveniles is duplicitous in nature.” The juvenile court explained “La. R.S. 14:95.8 is a narrowly tailored statute which passes the strict scrutiny analysis [presumably after taking into | (¡consideration the severance of the four exceptions in Subsection (C)(4 — 7) ] and therefore, there is no need for any additional restrictions on juveniles to possess guns to be found in any other statutes.”
The state sought direct review of the juvenile court’s declaration of the unconstitutionality of La. R.S. 14:95(A)(1) as applied to juveniles pursuant to La. Const. *859 art. V, § 5(D).[4] The state also asserts in brief that it is directly appealing the juvenile court’s ruling insofar as it found La. R.S. 14:95.8(C)(4-7) unconstitutional and severed those portions of the statute from La. R.S. 14:95.8. J.M. applied for writs directly to this court to consider the underlying constitutionality of La.' R.S. 14:95.8 with the state’s appeal. This court granted J.M.’s writ application and consolidated the two matters for the court’s docket.[5] The court has received amicus curiae briefs from the Louisiana District Attorneys Association and the Brady Center to Prevent Gun Violence.
LAW AND DISCUSSION
This case requires us to determine the constitutionality of two criminal statutes. Such questions of law are reviewed by this court de novo. City of Bossier City v. Vernon, 2012-0078, p. 2 (La. 10/16/12); 100 So.3d 301, 303.
' Nature of the Right to Keep and Bear Arms
Before we address the constitutionality of the statutes at issue, we must discuss the nature of the state constitutional right to keep and bear arms. After its 2012 amendment, La. Const, art. I, § 11 provides: “The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction on this right shall be subject to strict scrutiny.”
Unlike the provisions of the federal constitution, the constitutional ^provisions in our state constitution “are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature.” Radiofone, Inc. v. City of New Orleans, 1993-0962 (La.1/14/94); 630 So.2d 694, 697. This court’s function in construing a constitutional provision is to ascertain and give effect to the intent of the people who adopted the provision. See State v. Bazile, 2012-2243, p. 4 (La.5/7/13); 144 So.3d 719, 2013 WL 1880395; State v. Chinn, 2011-2043, p. 6-7 (La.2/10/12); 92 So.3d 324, 328; Radiofone, 630 So.2d at 698. Before ratification by the voters, the proposed amendment “was a mere proposal, without force or effect. The political act that made the [constitutional amendment] binding was the vote of the people; it is the understanding that can be reasonably ascribed to that voting population as a whole that controls.” Radiofone, 630 So.2d at 698. The proper analysis to determine the understanding of the voters is described as follows:
In general, in seeking to discover that constitutional intent, this court is guided by the same rules it follows in interpreting laws and written instruments.... When a constitutional provision is clear and unambiguous, and its application does not lead to absurd consequences, it must be applied as 'written without further interpretation in search of its intent. Every provision must be interpreted in light of the purpose of the provision and the interests it furthers and resolves. When the provision is susceptible of different meanings, it is interpreted by examining the context and the text in which it occurs as a *860 whole and by giving it the meaning that best conforms to its purpose.
Id. (internal citations omitted).
As we stated in State v. Amos, 343 So.2d 166, 168 (La.1977), “[t]he right to keep and bear arms, like other rights guaranteed by our state constitution, is not absolute.” That limits may be imposed on the right was evidenced in the language of the official ballot proposition presented to the voters. The proposition asked:
Do you support an amendment to the Constitution of the State of Louisiana to provide that the right to keep and bear arms is a fundamental right and any restriction of that right requires the highest standard of review by a court? (Amends Article I, Section 11)
IsSee Acts 2012, No. 874, § 3.
The voters of Louisiana did not ratify this constitutional amendment in a vacuum. In our opinion, the reference to restrictions on the right to keep and bear arms in the proposition reflects an expectation of sensible firearm regulation held by the voters, and comports with historical restrictions with respect to the acquisition, possession or use of firearms for lawful purposes found in Louisiana law. The Supreme Court has described a similar understanding of the nature and limitations of the right to bear arms in the analogous Second Amendment.[6] See District of Columbia v. Heller, 554 U.S. 570, 626, 128 5.Ct. 2783, 2816, 171 L.Ed.2d 637 (2008) (“From Blackstone through the 19th-cen-tury cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.”).
We also conclude the voters’ ratification of strict scrutiny as a review standard of alleged infringements on the right to keep and bear arms was not meant to invalidate every restriction on firearms, whether in existence at the time the amendment was ratified or yet to be enacted. Rather, the strict scrutiny standard adopted by the voters “is designed to provide a framework for carefully examining the importance and sincerity of the reasons advanced by the governmental decisionmaker” for firearm regulation within the context of the fundamental right to keep and bear arms. Grutter v. Bollinger, 539 U.S. 306, 327,123 S.Ct. 2325, 2338, 156 L.Ed.2d 304 (2003). In Draughter, decided in our last opinion cycle, we concluded the right to bear arms has always been a fundamental right and the amendment to the constitutional provision merely sought to ensure that the review standard of an alleged infringement of this fundamental right was consistent with 19developing standards of constitutional analysis. Id., 130 So.3d at 855, slip op. at 10. Strict scrutiny requires a careful examination by our courts, keeping in mind that the fundamental right at issue is one where some degree of regulation is likely to be necessary to protect the public safety. Grutter, 539 U.S. at 327, 123 S.Ct. at 2338 (in a strict scrutiny analysis, “context matters.”).

Strict Scrutiny Analysis

La. Const, art. I, § 11 states any restriction on the right to keep and bear arms must meet strict scrutiny review. Where strict judicial scrutiny is required, a state “is not entitled to the usual presumption of validity, the state rather than the complainant must carry a heavy burden of justification, the state must demonstrate its [legislation] has been structured with *861 precision, and is tailored narrowly to serve legitimate objectives, and that it has selected the less drastic means for effectuating its objectives.” Southland Corp. v. Collector of Revenue for Louisiana, 321 So.2d 501, 505 (La.1975); see also State v. Brenan, 1999-2291, p. 6 (La.5/16/00); 772 So.2d 64, 69; Warner, 2005-1303, p. 37; 21 So.3d at 246. In meeting this heavy burden of justification, the state’s role is to present evidence of the compelling nature of the government’s interest served by the regulation and to demonstrate the restrictions are narrowly tailored to achieve the asserted interest.
In this case, the state based its argument on “logic, case law, and statistics.”[7] At issue are two long-standing limitations on the right to keep and bear arms — the prohibition against the carrying of concealed weapons, and the possession of firearms by children — for which there exists an extensive history of law and jurisprudence. Under such circumstances, we find “a long history, a substantial consensus, and simple common sense” to be sufficient evidence for even a strict scrutiny review. See Burson v. Freeman, 504 U.S. 191, 211, 112 S.Ct. 1846, 1858, 119 L.Ed.2d 5 (1992).
| V)La. R.S. U:95.8
To demonstrate a compelling government interest, the state must establish “the need to address a perceived problem, protect a group from harm, or cure some ill in society.’ ” Warner, 2005-1303, p. 44; 21 So.3d at 250. The state asserts the compelling interest of the government in enacting this legislation is the safety of the general public and juveniles in particular. The juvenile court agreed, and referred to a “well known [and] studied fact in our society, that the cognitive brain development of minors is not the same as an adult.”
We agree public safety is a compelling state interest for restricting the possession of handguns by juveniles. Common sense, science and social science agree that juveniles exhibit a sometimes transient lack of maturity, impetuosity, suggestibility and vulnerability which would make the possession of a handgun by a juvenile a danger for the public and the juveniles themselves. See Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2464-2465, 183 L.Ed.2d 407 (2012).[8] We | nalso note this *862 prohibition on the juvenile possession of a handgun is the type of long-standing limitation on the right to keep and bear arms with which voters were familiar. As early as in 1890, the Louisiana legislature made it a misdemeanor offense “for any person to sell, or lease or give through himself or any other person, any pistol, dirk, bowie-knife or any other dangerous weapon, which may be carried concealed to any person under the age of twenty-one years.” See 1890 La. Acts, No. 46.
Courts have found “the clandestine acquisition of firearms by juveniles and minors is a most serious problem facing law enforcement and the citizens of this country.” National Rifle Ass’n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185, 199 (5th Cir.2012), petition for cert, filed July 29, 2013, quoting S.Rep. No. 90-1097, at 79 (1968), 1968 U.S.C.C.A.N. 2112, 2167. The statistics obtained through a congressional investigation and referred to in the case law confirmed a “causal relationship between the easy availability of firearms other than a rifle or shotgun and ... youthful criminal behavior.” Id., 700 F.3d at 199, quoting Pub.L. No. 90-351, § 901(a)(6); 82 Stat. at 225, 26. Based on these considerations, we agree with the finding of the juvenile court in this respect and hold there is a compelling government interest supporting the enactment of La. R.S. 14:95.8.
Based on the historical tradition restricting the possession of weapons by | ^juveniles in Louisiana, the legislature could have instituted a total ban on a juvenile’s possession of a handgun. Instead, and in order to structure this legislation with precision, the legislature narrowly tailored the statute to provide exceptions for circumstances consistent with the possession or use of a handgun by a juvenile for a lawful purpose. A statute is narrowly tailored where, as here, it “actually advance[s] the interest asserted,” “is reasonably necessary to serve the state interest,” is not under- or over-inclusive, and no less “restrictive alternatives ... would serve the compelling state interest at least as well.” Warner, 2005-1303, pp. 48-49; 21 So.3d at 253-254.
The statute restricts only the possession of a certain type of weapon, a handgun, which according to statistics and case law considered by the juvenile court is the most readily accessible type of weapon to juveniles, and is most often used in committing crimes. The prohibition targets only individuals aged 16 years and younger, consistent with the studies and case law showing this as the most vulnerable *863 age group. We find the first four exceptions to the statute, La. R.S. 14:95.8(0(1-4), describe situations in which a juvenile would possess a handgun for the lawful purposes of engaging in, or traveling to and from, activities consistent with hunting, trapping, target shooting and firearms safety.[9] In La. R.S. 14:95.8(0(5-7), we find the legislature acknowledged the special relationship which parents or legal guardians of children possess. Where a parent or legal guardian believes a juvenile has shown sufficient maturity and skill to possess a handgun in certain specified locations or otherwise with written permission, the legislature has crafted an exception to encompass those circumstances.[10]
|islt is clear the legislature was focused on solving a particular problem — that of preventing persons sixteen years of age or younger, who might be immature and impulsive, from easily accessing handguns, in order to reduce the incidence of accidents or violent crime. We find La. R.S. 14:95.8 is narrowly tailored to achieve the legitimate purposes of the government’s interest in enacting this legislation. Considering the compelling government interest in enacting La. R.S. 14:95.8, and our finding the statute is narrowly tailored to achieve this legitimate purpose, we hold La. R.S. 14:95.8 withstands strict scrutiny analysis. The juvenile court’s ruling which severed Section C(4-7) from La. R.S. 14:95.8 is reversed.

La. R.S. 1⅛:9 5(A)(1)

J.M. initially argues the changes in the language from the former version of La. Const, art. I, § 11 to its current version eliminated the legislature’s authority to place any restrictions on the carrying of a concealed weapon. Specifically, J.M. asserts the removal of the phrase: “... but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person” invalidates any enforcement of La. R.S. 14:95(A)(1) whatsoever.[11]
Generally, a change to the language of an existing law, particularly the *864 | udeletion of a phrase authorizing an action, indicates the legislature was aware of the original language and its interpretation and signals a change in the law. State v. Johnson, 2003-2993, p. 15-16 (La.10/19/04); 884 So.2d 568, 577. Clearly, this is the basis for J.M.’s argument that in doing away with the constitutional authorization for legislation restricting the carrying of concealed weapons, the voters intended to restrict the legislature’s ability to make any laws on that subject. Under this interpretation, J.M. argues La. R.S. 14:95(A)(1) is unconstitutional and cannot serve as a basis for an adjudication of delinquency.
We disagree with J.M.’s interpretation of the effect of the constitutional amendment. In our opinion, the drafters and ratifiers did not intend to invalidate the existing law restricting the carrying of concealed weapons, or to restrict the legislature’s authority to pass laws on that subject. The clear and unambiguous language of the second sentence of the amended provision ensures that any restriction on the right to keep and bear arms, including those laws regarding the carrying of concealed weapons, must pass the requirements of strict scrutiny. There is no limitation on the phrase “any restriction.” To read the constitutional provision as J.M. urges would be inconsistent with the clear terms of the second sentence of La. Const, art. I, § 11. We hold the 2012 amendment to La. Const, art. I, § 11 did not invalidate La. R.S. 14:95(A)(1) and does not prohibit the legislature from enacting laws regarding the carrying of concealed weapons.
The juvenile court found the prohibition against intentionally carrying a concealed weapon, as applied to juveniles, overlapped the restriction on a juvenile’s possession of a handgun. In dismissing similar arguments, this court has held “even assuming the two offenses totally overlapped, we are not aware of how this statutory arrangement conflicts with any constitutional principle.” State v. Smith, 1999-0606, p. 16-17 (La.7/6/00); 766 So.2d 501, 514, quoting State v. Neal, 500 So.2d 374, 378 (La.1987). The court has explained “the policy of our | lficriminal code recognizes that there will be overlapping in the code sections and other statutes and expressly provides that in such cases prosecution may proceed under either provision.” Id. Our statutory policy intends that an offender “will be protected from unwarranted multiple prosecutions by the law concerning double jeopardy.” Neal, 500 So.2d at 378. We are not called upon to determine whether La. R.S. 14:95(A)(1), as applied to a juvenile, would violate double jeopardy principles when considered with La. R.S. 14:95.8 as delinquent acts. We express no opinion whether the facts at issue here, once developed from this pre-trial posture, would satisfy either the Bloclcburger test or the “same evidence” test used in Louisiana to answer a double jeopardy challenge. See La.C.Cr.P. art. 591; State v. Magee, 2011-0574, p. 6-7 (La.9/28/12); 103 So.3d 285, 334, cert, denied, -U.S.-, 134 S.Ct. 56,187 L.Ed.2d 49 (2013).
J.M. argues the prohibition against carrying concealed weapons does not pass strict scrutiny review, as there is no compelling reason for the legislation, as applied to juveniles, and the statute is not narrowly tailored. The state again asserts the compelling interest of the government in this legislation is the safety of the general public. The juvenile court found the state carried its burden of sufficient justification for the enactment of La. R.S. 14:95(A)(1).[12] As with the prohibition *865 against the possession of handguns by juveniles, we are again presented with a long-standing limitation on the right to keep and bear arms in Louisiana.
In State v. Flicker, 311 So.2d 863, 865 (La.1975), this court presented “an historical exegesis of the concealed weapons law in Louisiana.” Flicker noted “[t]he first statute to proscribe the concealment of weapons was enacted in 1813,” the year after Louisiana became a state. Id., 311 So.2d at 865. The preamble to La. Acts 1813, p. 172, § 1 provided:
11fiWhereas assassination and attempt to commit the same, have of late been of such frequent occurrence as to become a subject of serious alarm to the peaceable and. well disposed inhabitants of this state; and whereas the same is in a great measure to be attributed to the dangerous and wicked practice of carrying about in public places concealed and deadly weapons, or going to the same armed in an unnecessary manner....
In applying this statute, the court found “[t]his law became absolutely necessary to counteract a vicious state of society, growing out of the habit of carrying concealed weapons, and to prevent bloodshed and assassinations committed upon unsuspecting persons.” State v. Chandler, 5 La. Ann. 489, 489^190 (1850). In upholding this statute against a Second Amendment challenge, the court found:
[t]his was never intended to prevent the individual States from adopting such measures of police as might be necessary, in order to protect the orderly and well disposed citizens from the treacherous use of weapons not even designed for any purpose of public defence, and used most frequently by evil-disposed men who seek an advantage over then-antagonists, in the disturbances and breaches of the peace which they are prone to provoke. ■
State v. Smith, 11 La.Ann. 633 (1856). Against another Second Amendment challenge, the court explained: “[t]he statute in question does not infringe the right of the people to keep or bear arms. It is a measure .of police, prohibiting only a particular mode of bearing arms which' is found dangerous to the peace of society.” State v. Jumel, 13 LaAnn. 399, 399-400 (1858).
Other than the elimination of language requiring the weapon to be in full open view, and the addition of a requirement of intentional concealment, the amendments to the statute have not changed the definition of illegally carrying a weapon to the present day. Fluker, 311 So.2d at 865. This type of long-standing limitation on the right to keep and bear arms is the kind of historical restriction of which the voters of Louisiana were aware when they voted for the constitutional amendment. Just as concealed weapons presented a danger to the public order in 1813, they continue to do so, particularly when those weapons are in the hands of impulsive, immature juveniles. Protecting the juvenile population from itself and ^protecting society-at-large from increased gun violence is now, more than ever, a compelling interest of the government; We find the state has a compelling interest in prohibiting juveniles from carrying concealed weapons.
Likewise, we find this statute is narrowly drawn to achieve the state’s legitimate interest in public safety. First, La. R.S. 14:95(A)(1) is not over-inclusive because it does not prohibit more conduct than necessary. The statute prohibits individuals from carrying a concealed firearm (or other dangerous weapon) in public without a permit. Under La. R.S. 40:1379.3, Louisi *866 ana residents over the age of 21 may obtain a permit to carry concealed weapons for up to five years. See La. R.S. 40:1379.3(H)(2). There is even a provision for a lifetime permit. See La. R.S. 40:1379.3(V). The statute at issue is not a complete ban on the carrying of concealed weapons; the statute merely places restrictions on the carrying of concealed weapons in order to protect the public. The statute is not under-inclusive, as it includes firearms and all other instruments “customarily used or intended for probable use as a dangerous weapon.” La. R.S. 14:95(A)(1).
J.M. asserts the ease with which a permit to carry a concealed weapon may be obtained negates the state’s compelling interest in enacting the prohibition in the first place. We disagree. The very fact that an individual submits his identifying information and likeness to the state, and meets the qualifications for obtaining a permit (including a demonstration of competence and training with a handgun), is at least some indicia that the individual intends to carry a concealed weapon for a lawful purpose, i.e. the defense of self or property.
Finally, J.M. contends there is no need for La. R.S. 14:95(A)(1) because the Second Amendment of the United States Constitution and La. Const, art. I, § 11 are themselves public safety measures. We find the legislature, in the exercise of its police power, has the authority to enact a statute prohibiting the carrying of concealed weapons. See Fruge v. Board of Trustees of Louisiana State Employees’ 1 ¶^Retirement System, 2008-1270, p. 5 (La.12/2/08); 6 So.3d 124, 128 (“Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit.”).
Considering the compelling government interest in enacting La. R.S. 14:95(A)(1), and our finding the statute is narrowly tailored to achieve this legitimate purpose, we hold La. R.S. 14:95(A)(1) withstands strict scrutiny analysis. The juvenile court’s ruling which held La. R.S. 14:95(A)(1) unconstitutional as applied to juveniles is reversed.
CONCLUSION
We hold the 2012 amendment to La. Const, art. I, § 11, which deleted the specific constitutional language authorizing the passage of laws regarding the carrying of concealed weapons, did not invalidate La. R.S. 14:95(A)(1) or restrict the legislature’s ability to pass laws on this subject. We further hold La. R.S. 14:95(A)(1) and La. R.S. 14:95.8 pass the strict scrutiny analysis required by the constitutional provision. The juvenile court ruling which severed Sections C(4-7) from La. R.S. 14:95.8 and held La. R.S. 14:95(A)(1) to be unconstitutional is reversed. This matter is remanded to the juvenile court for further proceedings.
REVERSED AND REMANDED.
Retired Judge MARION EDWARDS, assigned as Justice ad hoc, sitting for HUGHES, J., recused.

 Retired Judge Marion Edwards, assigned as Justice ad hoc, sitting for Hughes, J., recused.

. La. R.S. 14:95.8(D) provides: "For the purposes of this Section "handgun” means a firearm as defined in R.S. 14:37.2, provided however, that the barrel length shall not exceed twelve inches.” La. R.S. 14:37.2(B) defines a "firearm” as "an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.”

. Other provisions of the statute additionally define the illegal carrying of a weapon by an enemy alien; the ownership, possession, custody or use of any tools or explosives with the intent to commit a crime; the manufacture, ownership, possession, custody or use of certain types of knives; and the intentional possession of a dangerous weapon on a school campus or on a school bus. La. R.S. 14;95(A)(2 — 5).

.La. R.S. 49:257(C) provides: "Notwithstanding any other law to the contrary, the attorney general, at his discretion, shall represent or supervise the representation of the interests of the state in any action or proceeding in which the constitutionality of a state statute or of a resolution of the legislature is challenged or assailed.” See also La.C.Cr.P. art. 62(B), which provides: "The attorney general has authority to institute and prosecute, or to intervene in any proceeding, as he may deem necessary for the assertion or protection of the rights and interests of the state.”

. La. Const, art. V, § 5(D) provides in pertinent part: "(D) Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be áppealable to the supreme court if (1) a law or ordinance has been declared unconstitutional....”

. See La. Const, art. V, § 5(A), which provides in pertinent part: "The supreme court has general supervisory jurisdiction over all other courts."

. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.”

. Although the state referred to several studies, and such information was apparently considered by the juvenile court, none of this information was admitted in evidence.

. In Miller, the Supreme Court referenced Roper v. Simmons, 543 U.S. 551, 569-570, 125 S.Ct. 1183, 1195, 161 L.Ed.2d 1 (2005) and Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) and noted: *862 Id., 132 S.Ct. at 2464-2465 (footnote omitted). Miller noted the science and social science supporting the conclusions made by the Supreme Court in Roper and Graham had become even stronger. Id., 132 S.Ct. 2464 n. 5. Compelling statistical support for these differences between juveniles and adults may also be found in National Rifle Ass’n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F.3d 185 (5th Cir. 2012) (finding the federal statute prohibiting federally licensed firearms dealers from selling handguns to persons under age 21 does not violate the Second Amendment) and United States v. Rene E., 583 F.3d 8 (1st Cir.2009), cert, denied, 558 U.S. 1133, 130 S.Ct. 1109, 175 L.Ed.2d 921 (2010) (Juvenile Delinquency Act ban of juvenile possession of handguns did not violate the Second Amendment).
*861 Those cases [Roper and Graham] relied on three significant gaps between juveniles and adults. First, children have a " ‘lack of maturity and an underdeveloped sense of responsibility,' ” leading to recklessness, impulsivity, and heedless risk-taking. Roper, 543 U.S., at 569, 125 S.Ct. 1183. Second, children "are more vulnerable ... to negative influences and outside pressures,” including from their family and peers; they have limited "contro[l] over their own environment” and lack the ability to extricate themselves from horrific, crime-producing settings. Ibid. And third, a child’s character is not as "well formed” as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievable] deprav[ity].” Id., at 570, 125 S.Ct. 1183.
Our decisions rested not only on common sense — on what "any parent knows" — but on science and social science as well. Id., at 569, 125 S.Ct. 1183. In Roper, we cited studies showing that " '[o]nly a relatively small proportion of adolescents' " who engage in illegal activity " 'develop entrenched patterns of problem behavior.’ ” Id., at 570, 125 S.Ct. 1183 (quoting Stein-berg & Scott, Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009, 1014 (2003)). And in Graham, we. noted that “developments in psychology and brain science continue to show fundamental dif *862 ferences between juvenile and adult minds” — for example, in "parts of the brain involved in behavior control.” 560 U.S., at [68], 130 S.Ct., at 2026. We reasoned that those findings — of transient rashness, proclivity for risk, and inability to assess consequences — both lessened a child’s "moral culpability” and enhanced the prospect that, as the years go by and neurological development occurs, his " 'deficiencies will be reformed.’ ” Id., at [68], 130 S.Ct. at 2027 (quoting Roper, 543 U.S., at 570, 125 S.Ct. 1183).

. We note the Louisiana Constitution declares for the people of Louisiana the freedom to hunt, fish and trap, subject to the laws enacted by the legislature. La. Const, art. I, § 27 provides in pertinent part: "The freedom to hunt, fish, and trap wildlife, including all aquatic life, traditionally taken by hunters, trappers and anglers, is a valued natural heritage that shall be forever preserved for the people.”

. The Preamble to the Louisiana Children’s Code likewise recognizes the special relationship between parent or guardian and child, and the role of the state:
The people of Louisiana recognize the family as the most fundamental unit of human society; that preserving families is essential to a free society; that the relationship between parent and child is preeminent in establishing and maintaining the well-being of the child; that parents have the responsibility for providing the basic necessities of life as well as love and affection to their children; that parents have the paramount right to raise their children in accordance with their own values and traditions; that parents should make the decisions regarding where and with whom the child shall reside, the educational, moral, ethical, and religious training of the child, the medical, psychiatric, surgical, and preventive health care of the child, and the discipline of the child; that children owe to their parents respect, obedience, and affection; that the role of the state in the family is limited and should only be asserted when there is a serious threat to the family, the parents, or the child; and that extraordinary procedures established by law are meant to be used only when required by necessity and then with due respect for the rights of the parents, the children, and the institution of the family.

.The juvenile court did not invalidate La. R.S. 14:95(A)(1) on this ground. However, J.M. raised this as an additional argument in his challenge to the statute and we will address the contention in our de novo review.

. Our discussion of strict scrutiny encom- passes only Subsection (1) of Section (A) of *865 La. R.S. 14:95, the only provision of the statute applicable here.