WEIMER, Justice.
_JjWe granted a writ to determine whether a recent constitutional amendment involving a fundamental right to bear arms found in La. Const, art. I, § 11 renders a criminal statute related to the possession of a firearm while possessing illegal drugs, facially unconstitutional.
According to the defendant, because the right to bear arms has been recently enshrined as a fundamental constitutional right, notwithstanding the fact the defendant was allegedly carrying illegal drugs while in possession of a firearm, La. R.S. 14:95(E) is facially unconstitutional. Essentially, the defendant argues that, even assuming he possessed illegal drugs, because La. R.S. 14:95(E) deals not only with illegal drugs but with firearms, the firearm aspect of the statute cannot survive strict *974 judicial scrutiny, and the entire statute must be declared unconstitutional.
We disagree. Nothing in the recent constitutional amendment regarding firearms requires dismissal of the criminal charges against the defendant for carrying a firearm while in possession of illegal drugs.
[2Under longstanding constitutional authorities, on its face, the challenged statute does not restrict the legitimate exercise of the fundamental right to bear arms. Instead, the statute enhances the penalty for possessing illegal drugs while in carrying a firearm. When a defendant carries a firearm while possessing illegal drugs, La. R.S. 14:95(E) is facially constructed such that the possession of a firearm under those circumstances is illicit and is made illicit as a result of defendant’s own illegal activities. Further, the illicit possession of a firearm may be used to enhance the penalty for possessing illegal drugs. Our own jurisprudence, and that of the United States Supreme Court, demonstrates the existence in La. R.S. 14:95(E) of a compelling state interest, which is narrowly tailored to restrict firearm possession by those who possess illegal drugs.
The legislature’s criminalization of the possession of illegal drugs with the illicit possession of a firearm, therefore, passes strict judicial scrutiny. Thus, on its face, there is nothing in La. R.S. 14:95(E) that requires this court to declare that statute to be unconstitutional.
FACTUAL AND PROCEDURAL BACKGROUND
The facts alleged by the state in this case are contained in a New Orleans Police Department report. On September 10, 2012, at 4:40 p.m., the defendant, Rico Webb, was in a car driven by his girlfriend, Brianisha Robinson. Officers Berger and Abram conducted a traffic stop of the vehicle at South Claiborne Avenue and Cleveland Street for an allegedly broken taillight. The officers smelled the faint odor of marijuana when they approached the car, so they asked the occupants to exit the vehicle. After the officers issued Miranda warnings to both occupants, the defendant stated that he had a marijuana “blunt” in his backpack. The defendant removed the blunt from his backpack, which later tested positive for marijuana. The officers then |ssaw a handgun on the driver’s side floorboard. The defendant claimed ownership of the gun. It was determined that the defendant legally purchased the firearm and had the corresponding paperwork. Ms. Robinson was given a traffic citation for the broken taillight and driving without a license and was then released from the scene. However, the defendant was arrested for violating La. R.S. 14:95(E). He has no prior felony criminal convictions and was not arrested for, nor charged with, misdemeanor possession of marijuana.
The defendant filed a motion to quash the bill of information, which was denied, as the district court declined to find La. R.S. 14:95(E) unconstitutional. The court explained that strict scrutiny is essentially a two part test, under which legislation must “(1) ... serve[ ] a compelling state interest, and (2) ... [be] narrowly tailored to serve that compelling interest.” The district court noted the defendant had conceded, in his motion to quash, that La. R.S. 14:95(E) promotes a compelling state interest, namely, public safety.[1]
*975 On appeal, the defendant again urged that he was being charged with an unconstitutional crime. The court of appeal declined to exercise supervisory review over the case and remarked that State v. Draughter, 13-0914 (La.12/10/13), 180 So.3d. 855, was pending before this court. State v. Webb, 13-0759 (La.App. 4 |4Cir. 6/17/13) (unpublished writ action). In Draughter, the district court declared the state’s felon-in-possession of a firearm statute, La. R.S. 14:95.1, was unconstitutional. We reversed, finding the right to bear arms did not extend to Mr. Draughter, who remained under state supervision as a “probationer or. parolee.” Id., 13-0914 at 16, 130 So.3d. at 867. While Draughter remained pending, the defendant in the instant case applied for this court’s supervisory review. Because the newly enacted constitutional amendment has generated substantial litigation, to provide guidance, we granted the defendant’s application to determine the constitutionality of La. R.S. 14:95(E). State v. Webb, 13-1681 (La.11/22/13), 126 So.3d 474.
LAW AND ANALYSIS
The determination of the constitutionality of a statute presents a question of law, which is reviewed by this court de novo. See Draughter, 13-0914 at 4, 130 So.3d. at 859-60, citing City of Bossier City v. Vernon, 12-0078, p. 2 (La.10/16/12), 100 So.3d 301, 303.

Principles of Review for Constitutionality

“Mindful of our civilian mandate, ... we begin [our review of the defendant’s constitutional challenge], as we must, with the language of the [statute] itself.” Quinn v. Louisiana Citizens Property Ins. Corp., 12-0152, p. 11 (La.11/2/12), 118 So.3d 1011, 1018. The challenged statute, La. R.S. 14:95(E), provides as follows:
If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence. Upon a second or subsequent conviction, the offender shall be imprisoned at hard labor for not less than twenty years nor more than thirty years without the benefit of probation, parole, or suspension of sentence.
15Although there are numerous factors that may bear upon interpreting a statute, as it concerns the defendant’s challenge to whether the statute conforms to the language and purposes of the constitution, the following summary is especially informative: “Words and phrases shall be read in context and shall be construed according to the common and approved usage of the language.” La. R.S. 1:3. “The meaning and intent of a law is determined by considering the law in its entirety and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the *976 legislature in enacting the law.” Sensebe v. Canal Indem. Co., 10-0703, pp. 8-9 (La.1/28/11), 58 So.3d 441, 447, quoting Hawkins v. Redmon, 09-2418, p. 9 (La.7/6/10), 42 So.3d 360, 365.
This court’s civilian mandate applies with equal force when interpreting constitutional provisions. Therefore, “|w]e begin, as we must, with the applicable constitutional language.” Louisiana Federation of Teachers v. State, 13-0120, p. 24 (La.5/7/13), 118 So.3d 1033, 1049. As amended effective December 10, 2012, La. Const, art. I, § 11 now provides: “The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.”[2] See 2012 La. Acts 874, § 1. “When a constitutional provision is plain and unambiguous and its application does not lead to absurd consequences, its language must be given effect. “When interpreting constitutional language, the same general rules used in interpreting laws and other written instruments are followed.” Louisiana Federation of Teachers, 13-0120 at 24, 118 So.3d at 1049 (citations omitted).
IfiWhen analyzing a statute under a provision of our constitution to determine whether the statute is constitutional, the following principles apply:
As a general rule, legislative instruments are presumed to be constitutional; therefore, the party challenging the validity of a legislative instrument has the burden of proving its unconstitutionality.
Because the provisions of the Louisiana Constitution are not grants of power, but instead are limitations on the otherwise plenary power of the people of the state, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. Consequently, a party challenging the constitutionality of a legislative instrument must point to a particular provision of the constitution that would prohibit the enactment of the legislative instrument and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the legislative instrument in question. A constitutional limitation on the legislative power may be either express or implied.
Finally, because it is presumed that the legislature acts within its constitutional authority in promulgating a legislative instrument, this court must construe a legislative instrument so as to preserve its constitutionality when it is reasonable to do so. In other words, if a legislative instrument is susceptible to two constructions, one of which would render it unconstitutional or raise grave constitutional questions, the court will adopt the interpretation of the legislative instrument which, without doing violence to its language, will maintain its constitutionality.
Louisiana Federation of Teachers, 13-0120 at 21-22, 118 So.3d at 1048 (citations omitted).
These principles are general guidelines to aid a court’s review. More specific guidelines may dictate the burden required of a person challenging the constitutionality of legislation, depending on the type of constitutional challenge. Such is the case here, where the defendant concedes that he is bringing a “facial chal *977 lenge” to the constitutionality of La. R.S. 14:95(E). In Prejean v. Barousse, 12-1177, p. 4 (La.1/29/13), 107 So.3d 569, 571-72, we recently reiterated the following specific guidelines applicable to facial challenges: “To challenge a legislative act as unconstitutional on its face is the most difficult challenge to mount ^successfully, since the challenger must establish that no set of circumstances exist under which the statute would be valid.”

The Defendant’s Facial Constitutional Challenge

Because the right to bear arms is now undeniably a fundamental right as described in La. Const, art. I, § 11,[3] the defendant argues that La. R.S. 14:95(E) must survive the test of “strict scrutiny,” a test which is mentioned, but not defined, in La. Const, art. I, § 11. For purposes of his argument, the defendant essentially concedes he possessed illegal drugs while also possessing a firearm, but contends La. R.S. 14:95(E) cannot survive strict scrutiny.
In his motion to quash, the defendant admitted “it is clear that La. R.S. § 14:95E was passed [by the legislature] in order to promote a compelling government interest, namely that of public safety.” The defendant noted that this court, in State v. Blanchard, 99-3439, p. 3 (La.1/18/01), 776 So.2d 1165,1169-70, had already examined the statute’s legislative intent and found that the statute was enacted to promote public safety interests.
However, in the court of appeal and now in this court, the defendant tries to retreat from his earlier admission that La. R.S. 14:95(E) promotes a compelling governmental interest in public safety — “The State cannot simply invoke talismanic ‘public safety’ language to avoid the scrutiny the voters mandated when approving the Constitutional amendment at issue in this case.” The defendant attempts to blame the state for a dearth of evidence in the record showing a compelling governmental interest: “In this case the state provided no evidentiary basis whatsoever to the trial |scourt. The state provided no studies or testimony to support their [sic] assertion that the state has a compelling interest in further sanctioning legitimate owners of firearms for possessing those weapons with controlled dangerous substances.”
In the district court, the defendant argued that La. R.S. 14:95(E) was not narrowly tailored to promote the admitted compelling governmental interest of public safety. The crux of his argument was that La. R.S. 14:95(E) “criminalizes innocent behavior. Under the statute, the legal possession of a registered firearm is transformed, without discretion, into a felony where that possession occurs in conjunction with any drug infraction, however slight.” In this court, the defendant elaborates upon his argument that La. R.S. 14:95(E) is not narrowly tailored. According to the defendant, because possessing a firearm is unlawful in conjunction with all controlled dangerous substances, a person with a validly prescribed drug could be found in violation of the statute. Finally, the defendant urges that the penalty under La. R.S. 14:95(E) (five years’ imprisonment for a first offense) is excessive.

Applying Strict Scrutiny to the Defendant’s Facial Challenge

Strict scrutiny is the most rigorous test for determining whether a law *978 is constitutional. Laws restricting fundamental rights are subject to strict scrutiny because they are considered to be so essential to the structure of our society, in which citizens enjoy “ordered liberty.”[4] See Sudwischer v. Estate of Hoffpauir, 589 So.2d 474, 478 (La.1991). Setting aside for a moment the technicalities of the strict scrutiny test, if the act of possessing a firearm along while in possession of illegal drugs is so |9essential to the liberties citizens ought to be able to enjoy in an orderly society, then legislation criminalizing the possession of firearms and illegal drugs is unconstitutional. Such is the practical question posed by the defendant’s challenge under La. Const, art. I, § 11.
Returning then to the technical structure of the strict scrutiny test, the district court correctly observed the test is twofold.[5] For a law to survive strict scrutiny, “the government bears the burden of proving the constitutionality ... by showing (1) that the [law] serves a compelling governmental interest, and (2) that the [law] is narrowly tailored to serve that compelling interest.” Draughter, 13-0914 at 8, 130 So.3d at 862, quoting In re Warner, 05-1303, p. 37 (La.4/17/09), 21 So.3d 218, 246.
Although we are not bound to undertake a “compelling state interest” review,[6] we agree with the defendant’s initial argument that La. R.S. 14:95(E) serves the compelling interest of public safety. Indeed, in Blanchard, we observed two compelling safety interests:
The aim of the legislature in enacting [La. R.S. 14:95(E) ] was to criminalize possession and/or use of a dangerous weapon, including a firearm, in order to prevent those engaged in drug use and distribution from engaging in the violent behavior endemic to the drug trade. This 1 instatute was enacted not solely for the protection of police officers ... but also for the protection of the general public.
State v. Blanchard, 99-3439 at 3, 776 So.2d at 1169-70, citing State v. Blanchard, 99- *979 599 (La.App.5 Cir.11/10/99), 749 So.2d 19, 25. This court is not alone in recognizing the connection between drug use/trafficking and gun violence. The United States Supreme Court noted that in two major cities, over half of all murders “were drug related.” Smith v. U.S., 508 U.S. 223, 240, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993). Moreover, the Court observed: “no doubt ... drugs and guns are a dangerous combination.” Id.
Based on legislature’s intent “to prevent those engaged in drug use and distribution from engaging in the violent behavior endemic to the drug trade,”[7] and the connection between illegal drugs and violence,[8] we find there is a compelling state interest in restricting the simultaneous possession of illegal drugs and firearms.
Not only does the Supreme Court’s observation about the connection between illegal drugs and firearms support the existence in La. R.S. 14:95(E) of a compelling public safety interest, but the Smith Court’s observations also refute some of the defendant’s specific arguments that there is no public safety concern.
According to the defendant, the simultaneous possession of an illegal drug and a firearm is an innocuous coincidence. The defendant also argues that in no way does possessing a firearm by an alleged consumer of illegal drugs, such as himself, promote drug trafficking. Apparently, the defendant would have this court overlook the obvious fact that because possessing marijuana is unlawful, the defendant must have employed some unlawful means to obtain the drug. The defendant would also have this court hold that the firearm must actually be used in some manner in order Infer La. R.S. 14:95(E) to promote a compelling governmental interest. These arguments are unavailing, as the Court in Smith directly spoke to how possession of a firearm may be employed in drug transactions.
In Smith, 508 U.S. at 240, 113 S.Ct. 2050, the defendant claimed he traded a firearm for illegal drugs and the mere trade of a firearm did not equate to the “use” of a firearm, as prohibited by 18 U.S.C. § 924(c)(1). Rejecting this argument, the Court ruled: “The fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of destructive capacity.” Id. The Court explained: “as experience demonstrates, [a firearm] can be converted instantaneously” inasmuch as a firearm can interchangeably serve as either “cannon” or “currency” for the illegal drug trade. Id. In other words, a firearm can be an instrumentality to promote drug trafficking by violence or threat of violence. Or, alternatively, because of the capabilities to misuse a firearm by aiding drug trafficking, a firearm is highly desirable by buyers and sellers of illegal drugs. In either case, mindful of the Court’s observations in Smith, we reject the defendant’s argument that we should treat the possession of a firearm and an illegal drug as some innocuous coincidence.[9] Reflected in La. R.S. 14:95(E) is a compelling state interest in public safety by preventing drug trafficking.
Having found La. R.S. 14:95(E) promotes a compelling state interest, we *980 turn to the second aspect of strict scrutiny. We examine whether La. R.S. 14:95(E) “is precisely drawn or narrowly tailored to serve that compelling interest.” In re Warner, 05-1303 at 47, 21 So.3d at 253. “As these terms imply, this is an examination of the tightness of fit between the regulation and the state interest.” Id. | ^The termed “narrowly tailored” inquiry is designed to insure the government “eause[s] the least interference possible with the right” at issue. Copeland v. Copeland, 07-0177, p. 10 (La.10/16/07), 966 So.2d 1040,1047.
The fit between the state’s public safety interests — associated with preventing drug trafficking — and citizens’ gun rights, is not an issue of first impression for this court. In Blanchard, 99-3439 at 1, 776 So.2d at 1167, the defendant challenged the constitutionality of La. R.S. 14:95(E) as applied to his conviction for possessing marijuana and a pistol in his home. The marijuana was located under a sofa cushion and in an ashtray, while the pistol was located in a kitchen cabinet. Id., 99-3439 at 1, 776 So.2d at 1167. The defendant argued La. R.S. 14:95(E) unconstitutionally abridged his right to bear arms because he did not “actual[lyj” possess the firearm at the time of his arrest in his home. Id., 99-3439 at 2, 4, 776 So.2d at 1168-69. Instead, according to the defendant, he merely “constructively” possessed the firearm. Id.
In Blanchard this court held that the right to bear arms was not unconstitutionally abridged when a defendant possessed illegal drugs and either actually or constructively possessed a firearm. This court indicated, however, that the right to bear arms would not be unconstitutionally infringed in situations of “constructive” possession, under the limited circumstances where the state could “show a nexus between the firearm and the drugs.” Id., 99-3439 at 1, 776 So.2d at 1167. In cases of “constructive” possession of a firearm, this court recognized that limiting the reach of La. R.S. 14:95(E) to circumstances where a nexus between the firearm and the drugs would “eliminate[ ] the risk that the statute will reach 113noncriminal or constitutionally protected activity.”[10] Thus, the law is already well-settled that La. R.S. 14:95(E) does not apply to every situation of possessing controlled substance and a firearm. The limitations placed upon cases of “constructive” possession are evidence that La. R.S. 14:95(E) is narrowly tailored. See Florida Bar v. Went For It, Inc., 515 U.S. 618, 628, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995), quoting Burson v. Freeman, 504 U.S. 191, 211, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (noting that the test for strict scrutiny can be satisfied “based solely on history, consensus, and ‘simple common sense’ ”).
There is also a somewhat unique feature of La. R.S. 14:95(E) that demonstrates the law’s narrow tailoring. As defendant accurately concedes in his brief, this unique *981 feature is that the element of possessing a firearm is not a “restriction” upon a fundament right in the typical sense. Instead, La. R.S. 14:95(E) operates such that the element of “firearm possession is being used by the state as an enhancing factor ” for the defendant’s “possessing a misdemeanor quantity of marijuana.” (Emphasis added.) (Br. p. 8)
Significant to the issue of the narrow tailoring of a law, the United States Supreme Court has again provided guidance relative to the effect of the “enhancing factor” described by the defendant. See Jones v. Helms, 452 U.S. 412, 101 S.Ct. 2484, 69 L.Ed.2d 118 (1981). The Court found that a law passes constitutional muster where the law is structured such 114that a person’s exercise of a fundamental right is a factor used to enhance the sentence for criminal activity. As we shall see, for purposes of constitutional analysis, an enhancing factor exists when an element of a law is in itself a fundamental right, but that right is exercised in connection with otherwise illegal conduct.
In Helms, the Court was faced with a similar constitutional challenge. The Helms Court observed Georgia generally criminalized parental abandonment of a child as a misdemeanor. However, if the parent, during the course of child abandonment, crossed state lines, Georgia criminalized the same abandonment as a felony. Helms, 452 U.S. at 414, 101 S.Ct. 2484. Crossing state lines, the Court pointed out, is undeniably a fundamental right and the restriction of that right traditionally failed strict scrutiny. See Id. at 420, 101 S.Ct. 2434. The Court did, however, rule that notwithstanding “the fundamental nature of this right [to travel], there nonetheless are situations in which a State may prevent a citizen from leaving.” Id. at 419, 101 S.Ct. 2434.
Instead of failing strict scrutiny (as a restriction of fundamental rights often does) and, importantly for the instant case, the Court found that “appellee’s own misconduct [in abandoning his child] had qualified his right to travel interstate.” Id. at 420, 101 S.Ct. 2434. The Court noted Georgia’s law did not separately criminalize the right to interstate travel or otherwise restrict that right. Id. at 422, 101 S.Ct. 2434. In terms of constitutional analysis, the Court explained: “[T]he question is whether the State may enhance the misdemeanor of child abandonment to a felony if a resident offender leaves the state after committing the offense.” Id. at 422, 101 S.Ct. 2434. (Emphasis added.) The Court answered that question affirmatively and ruled Georgia’s law was constitutional, as follows: “[Although a simple penalty for leaving a State is plainly impermissible, if departure aggravates the consequences of conduct that is otherwise punishable, the State may [ 1fitreat the entire sequence of events, from the initial offense to departure from the State, as more serious than its separate components.” Id. at 422-23, 101 S.Ct. 2434 (footnote omitted).
Addressing the fit between enhancing the penalty for child abandonment and the restriction upon the fundamental right to interstate travel, the Helms Court ruled the law’s purpose was “to cause parents to support their children,” and “this purpose [wa]s served by making abandonment within the State followed by departure a more serious offense than mere abandonment.” The Court concluded: “We therefore are unwilling to accept the suggestion that this enhancement is an impermissible infringement of appellee’s constitutional right to travel.” Id. at 423, 101 S.Ct. 2434.
In the instant case, the possession of a firearm is used as an enhancement to the crime of possessing marijuana. This is *982 illustrated by the fact the penalty for simple possession of marijuana, first offense, is a fine of “not more than five hundred dollars, imprison[ment] ... for not more than six months, or both.” La. R.S. 40:966(E). Because the penalty does not call for hard labor, simple possession of marijuana is a misdemeanor offense. See La. R.S. 14:2(A)(4). In contrast, the penalty under the challenged statute, La. R.S. 14:95(E), for possessing marijuana and a firearm is a felony, with a penalty for a first time offense of a fine of “not more than ten thousand dollars and imprison[ment] at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence.” Like the enhancement found constitutionally permissible in Helms, 452 U.S. at 422, 101 S.Ct. 2434, a crime that would otherwise be a misdemeanor (simple possession of marijuana) is enhanced to a felony under La. R.S. 14:95(E).
Similar to the Court in Helms, we find it is constitutionally permissible for the state to treat the entirety of possessing illegal drugs and a firearm as a more serious crime than possessing illegal drugs alone. See Helms, 452 U.S. at 422-23, 101 S.Ct. 2434.
11fiBecause the element of firearm possession in La. R.S. 14:95(E) is more in the nature of an “enhancement” than a restriction upon the legitimate possession of firearms and the act of possessing illegal drugs “qualiffies]” a person’s ability to enjoy a fundamental right,[11] we hold the statute “is precisely drawn or narrowly tailored to serve” the compelling interest of protecting the public from the dangers inherent in the combination of illegal drugs and firearms. See In re Warner, 05-1303 at 47, 21 So.3d at 253. Additionally, because not every instance of firearm possession is an enhancement of criminal conduct,[12] such is further reason for us to find La. R.S. 14:95(E) “causes the least interference possible” to the right to keep and bear arms. See Copeland, 07-0177 at 10, 966 So.2d at 1047.
Mindful that the defendant has brought a facial challenge, we reject his argument that La. 14:95(E) is not narrowly tailored because, according to the defendant, the statute criminalizes all controlled dangerous substances. Where, as here, a court finds a single set of facts by which a statute is constitutional, a facial challenge must fail. See Draughter, 13-0914 at 14, 130 So.3d at 866 (noting “[A] person may not challenge [a] statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court.”); see also State v. Brown, 94-1290 (La.01/17/95), 648 So.2d 872, 875 (a party bringing a facial challenge “must establish that no set of circumstances exists under which the Act would be valid”). Here, we have found the charges against the defendant pursuant to La. 14:95(E) for possessing a firearm and marijuana, are valid inasmuch as the charges are supported by purposes which survive strict scrutiny. Under the [^jurisprudence just cited, it is not this court’s role to adjudicate the constitutionality of hypothetical charges brought against anyone else under other hypothetical circumstances.[13]
*983 CONCLUSION
In Draughter, we recently concluded that the right to keep and bear arms was not unconstitutionally infringed when that right was entirely denied to state prisoners and parolees “still under the state’s supervision.” Draughter, 13-0914 at 16, 130 So.3d at 867. Here, we conclude there is no unconstitutional deprivation of that right when a person actively engages in unlawful conduct by possessing illegal drugs while in possession of a firearm.
To promote public safety by curtailing drug trafficking, the state of Louisiana has a compelling interest in enhancing the penalty for illegal drug possession when a person engages in that illegal conduct with the simultaneous while in possession of a firearm. Undeniably, the right to keep and bear a firearm is a fundamental right in Louisiana. However, when a person is engaged in the unlawful conduct of possessing illegal drugs, the person’s own unlawful actions have “qualified his right” to engage in what would otherwise be the exercise of that fundamental right. See Helms, 452 U.S. at 420, 101 S.Ct. 2434 (indicating “appellee’s own misconduct [in abandoning his child] had qualified his right to travel interstate.”).
Earlier, we observed that in amending Article I, § 11 of the constitution, the electorate tasked this court with applying a very technical legal test to answer a very practical question. From all aspects, we have found the technical points of the law | ^constitutionally allow the state to make it a crime to possess an illegal drug with a firearm. We can now, therefore, answer this practical question: Is the act of possessing a firearm and illegal drugs so essential to the liberties citizens ought to be able to enjoy in an orderly society that a law to the contrary is unconstitutional? “We have held that the function of the court in construing constitutional provisions is to ascertain and give effect to the intent of the people who adopted it. It is the understanding that can reasonably be ascribed to the voting population as a whole that controls.” Caddo-Shreveport Sales and Use Tax Com’n v. Office of Motor Vehicles, Dept, of Public Safety and Corrections of State, 97-2233 (La.4/14/98), 710 So.2d 776, 780. Nothing in Article I, § 11 of the constitution informs us that the electorate, whose intent is ultimately the intent that governs, believed that possessing firearms with illegal drugs meets the electorate’s expectations of a society whose hallmark is ordered liberty.
We, therefore, affirm the ruling of the district court, finding La. R.S. 14:95(E) is not unconstitutional, and that nothing in Article I, § 11 of the constitution requires the charges against the defendant to be quashed. This case is remanded to the district court for further proceedings.
AFFIRMED AND REMANDED.

. The defendant’s motion to quash indicates: As an initial matter, it is clear that La. R.S. § 14:95E was passed in order to promote a compelling government interest, namely that of public safety. The Louisiana *975 Supreme Court characterized the interest in 2001, stating:
The aim of the legislature in enacting [La. R.S. 14:95(E) ] was to criminalize possession and/or use of a dangerous weapon, including a firearm, in order to prevent those engaged in drug use and distribution from engaging in the violent behavior endemic to the drug trade.
State v. Blanchard, 99-3439 (La.1/18/01), 776 So.2d 1165, 1168-69.

. See Draughter, 13-0914 at 10, 130 So.3d. at 863-64, for a discussion of the salient dates regarding the amendment of La. Const, art. I, § 11. Under Draughter, the defendant here has standing to bring a challenge to pre-revision conduct because the defendant’s case is "not yet final.” Id., 13-0914 at 11, 130 So.3d at 864.

. In Draughter, 13-0914 at 10, 130 So.3d. at 863, we explained, "we conclude the right to bear arms was always fundamental” under the Louisiana Constitution of 1974 and noted that the amendment of La. Const, art. 1, § 11 did not, therefore, effect a change in the nature of the right by adding the term "fundamental right” to describe the right to bear arms.

. ‘‘[FJundamental rights ... are 'implicit in the concept of ordered liberty' such that 'neither liberty nor justice would exist if [they] were sacrificed.’ ” Sudwischer, 589 So.2d at 478, citing Bowers v. Hardwick, 478 U.S. 186, 192-93, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), overruled on other grounds in Lawrence v. Texas, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), and Palko v. Connecticut, 302 U.S. 319, 324-26, 58 S.Ct. 149, 82 L.Ed. 288 (1937), overruled on other grounds in Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

. As amended, La. Const, art. I, § 11 specifies laws restricting the "right ... to keep and bear arms” are "subject[ed] to strict scrutiny.” Although the constitutional provision does not define "strict scrutiny,” it is a well-established term of art in law. We therefore draw from the jurisprudence, just as the district court did, in deriving the meaning of "strict scrutiny.”

. As noted earlier, the defendant admitted in his motion to quash that public safety was the legislature’s intended purpose behind La. R.S. 14:95(E) and such purpose amounted to a compelling state interest. This admission removed the question of a state interest as an issue for the district court to decide. However, for completeness of our de novo review of the constitutionality of La. R.S. 14:95(E), we do not merely accept the substance of defendant's admission, but guided by prevailing jurisprudence, we test whether a compelling state interest truly exists. See, e.g., Draughter, 13-0914 at 9, 130 So.3d at 862-63 (considering an argument against retroactively applying La. Const, art. I, § 11, raised for the first time on appeal by the state, we found "the state's possible waiver of this issue is subsumed by the requirement that we consider de novo the proper meaning” of a challenged firearm statute). We emphatically reject, however, the defendant’s argument that the state failed to produce necessary evidence in the district court to support the existence of a compelling state interest, when the defendant had admitted the existence of a compelling state interest.

. See Blanchard, 99-3439 at 3, 776 So.2d at 1169-1170.

. See Smith, 508 U.S. at 240, 113 S.Ct. 2050.

. The connection between firearm possession and illegal drug trafficking, is also reflected in the United States Sentencing' Commission Guidelines, § 2D1.1(b)(1) (recommending an increased sentence for drug-trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed”).

. In cases of "constructive” possession of a firearm, this court recognized the following restrictions would "eliminate[] the risk that the statute w[ould] reach noncriminal or constitutionally protected activity.”
Guided by ... decisions from other states, we find that under La. R.S. 14:95(E), when it cannot be established that the defendant was using or in actual possession of a firearm or that a firearm was within his or her immediate control, the state must prove more than mere possession of the firearm.
It must prove some connection between the firearm possession and the drug offense. This connection might be established by the following evidence: (1) the type of firearm involved; (2) the type of controlled dangerous substance involved; (3) the quantity of drugs involved; (4) the proximity of the firearm to the drugs; (5) whether the firearm is loaded; and (6) any other relevant evidence.
Blanchard, 99-3439 at 9, 776 So.2d at 1173.

. See Helms, 452 U.S. at 420, 422-23, 101 S.Ct. 2434.

. See Blanchard, 99-3439 at 9, 776 So.2d at 1173 (describing instances where constructive possession of a firearm has no nexus to illegal drugs).

.Similarly, and for completeness of responding to the defendant's arguments, we decline the defendant’s invitation to adjudicate the penalty under La. 14:95(E) as constitutionally excessive. The defendant has not been tried, not been convicted, and not been sentenced. Thus, any question as to the con *983 stitutionality of the penalty provisions of La. 14:95(E) is presently premature.