STATE OF LOUISIANA

VERSUS

JERMAN NEVEAUX

NO. 23-K-466

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-4029, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

November 08, 2023

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Stephen J. Windhorst

**WRIT DENIED.**
    **SMC**
    **FHW**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Darren A. Allemand

COUNSEL FOR DEFENDANT/RELATOR,
JERMAN NEVEAUX
 Richard J. Bourke
 Elliott T. Brown

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA, DEPARTMENT OF JUSTICE
 Grant L. Willis

**CHEHARDY, C.J.**

Defendant, Jerman Neveaux, seeks supervisory review of the trial court's ruling that denied his Motion to Declare La. C.C.P. art. 798(2)(A) & (B) Unconstitutional or to Bar the State from Challenging Jurors with Conscientious Scruples Against the Death Penalty Arising from Religious Beliefs. For the reasons that follow, the writ is denied.

**PROCEDURAL HISTORY**

On October 13, 2016, defendant, Jerman Neveaux, was indicted for the first degree murder of Jefferson Parish Sheriff's Office (JPSO) Detective David Michel in violation of La. R.S. 14:30. The State is seeking the death penalty.

On or about July 10, 2023, defendant filed a Motion to Declare La. C.C.P. art. 798(2)(A) & (B) Unconstitutional or to Bar the State from Challenging Jurors with Conscientious Scruples Against the Death Penalty Arising from Religious Beliefs. On July 24, 2023, the State filed State's Omnibus Response to Defendant's Motions Relative to Death Penalty Procedures and Substance, to which defendant filed a reply. Following a hearing, the trial court denied defendant's motion on August 23, 2013. Defendant timely filed the instant writ application on September 22, 2023.

**DISCUSSION**

*Defendant's Argument in Support of His Motion*

In his motion, defendant requested that the trial court declare La. C.Cr.P. art. 798(2)(a) and (b) unconstitutional on the basis that it substantially burdens the free exercise of religion. He argued that the Article grants the district attorney's office the discretion to challenge a juror for cause because of his or her conscientious scruples against the death penalty, even where those scruples derive from the exercise of sincerely held religious beliefs. Further, defendant argued that exclusion from public service as a juror on the most important criminal cases, and the cases in which citizens are asked to express the moral conscience of the

community, burdens free exercise for those whose religious beliefs would require them to forego voting for the death penalty. Additionally, defendant alleged that because La. C.Cr.P. art. 798(2)(a) and (b) is a discretionary clause, it is not a law of general application, and, therefore, the burden falls on the State under the strict scrutiny test to demonstrate a compelling State interest in refusing to exempt jurors from cause challenges where their conscientious scruples against the death penalty arise from their religious beliefs.

In addition, defendant argued the State cannot show a compelling State interest in failing to exempt from removal for cause those jurors, whose exercise of religious beliefs would substantially impair their ability to vote for death, where death is never a required outcome and where those jurors play a legitimate role in expressing the moral conscience of the community. He further argued that even if the State has an interest in ensuring the possibility of a death verdict in a particular case, the exclusion of religious jurors from capital trials is not narrowly tailored to satisfy that interest. Defendant requested that the trial court hold an evidentiary hearing in order to present evidence showing that being required to set aside religious beliefs opposed to the death penalty burdens religion. He asserted that in its recent decision in *Fulton v. City of Philadelphia*, *Pennsylvania*, 593 U.S. ---, 141 S.Ct. 1868, 210 L.Ed.2d 137 (2021), the United States Supreme Court explained the operation of the Free Exercise Clause. Lastly, in his writ application, defendant avers that the claim he presents is *res nova* and must be considered under the guidance of *Fulton*.

### The State's Response

In response, the State urged that defendant's argument essentially suggests that La. C.Cr.P. art. 798(2)(a) and (b) unconstitutionally results in a more death-prone jury, an argument which the State contends the Louisiana Supreme Court rejected in *State v. Odenbaugh*, 10-268 (La. 12/6/11), 82 So.3d 215, *cert. denied*,

2

568 U.S. 829, 133 S.Ct. 410, 184 L.Ed.2d 51 (2012). Further, the State argued defendant failed to show any constitutional defect in La. C.Cr.P. art. 798(2)(a) and (b), or that he is entitled to bar it from striking jurors with conscientious scruples against the death penalty. Moreover, the State argued that if defendant feels during *voir dire* that a challenge by the State is unfounded in law, he may make appropriate good faith and non-frivolous objections at that time, upon which the trial court will thereafter rule. Consequently, the State contended that, at this juncture, there is nothing to litigate on this point.

The State further argued that, by couching his claim in terms of religious freedom, defendant seeks to evade the fact that the constitutionality of La. C.Cr.P. art. 798(2)(a) and (b) has already been upheld. Specifically, the State noted that in *State v. Spell*, 21-876 (La. 5/13/22), 339 So.3d 1125, our Supreme Court held that regardless of its burden on religious exercise, a law that is neutral and generally applicable does not violate the Free Exercise Clause and is not subject to strict scrutiny. The State argued that, despite defendant's contention to the contrary, La. C.Cr.P. art. 798(2)(a) and (b) is neutral and generally applicable given that it does not target any particular religion and applies to anyone who falls under its ambit, regardless from where that person's beliefs stem. Further, the State asserted the analysis does not change simply because a prosecutor must raise a challenge to that particular individual, since the State does not have in place a system of individual exemptions from the law nor does the statute grant exemptions. Moreover, the State argued that La. C.Cr.P. art. 798(2)(a) and (b) does not treat any comparable secular activity more favorably than religious exercise, given that an atheistic individual who is morally opposed to the death penalty is subject to the same challenge as a religious individual who is morally opposed to the death penalty.

The State asserted that in *State v. Tucker*, 13-1631 (La. 9/1/15), 181 So.3d 590, *cert. denied*, 578 U.S. 1018, 136 S.Ct. 1801, 195 L.Ed.2d 774 (2016), the

Louisiana Supreme Court rejected a challenge to La. C.Cr.P. art. 798(2)(a) and (b) based on a free exercise argument. According to the State, since *Tucker*, there has been no further jurisprudence that would justify a changed result, and that La. C.Cr.P. art. 798(2)(a) and (b) would survive any level of scrutiny. For these reasons, and because defendant's free exercise challenge to La. C.Cr.P. art. 798(2)(a) and (b) has previously been rejected by controlling jurisprudence, the State argued that an evidentiary hearing on this issue would be an exercise in futility and a waste of the court's time and resources.

### *The August 23, 2023 Hearing on Defendant's Motion*

At the hearing on defendant's motion, defense counsel argued that, under *Fulton*, La. C.Cr.P. art. 798(2)(a) and (b) is not a law of general applicability. In response, the State argued that *Fulton* is a case involving foster care and, thus, is not applicable to a criminal case. Further, the State argued that La. C.Cr.P. art. 798(2)(a) and (b) is a law of general applicability, because someone may be unable to impose the death penalty, not only on the basis of religion, but for some other reason, and that *Fulton* did not change anything. Moreover, the State averred that it is a strained fit to call it an exemption when a prosecutor fails to make an appropriate cause challenge, because if a prosecutor allows someone to sit on a capital jury who does not believe in the death penalty, this is actually a windfall to the defense, not an exemption.

At the close of the hearing, the trial court denied defendant's motion to bar the State from challenging jurors with conscientious scruples against the death penalty arising from religious beliefs. The trial court ruled that La. C.Cr.P. art. 798 is a law of general applicability and not unconstitutional. Defendant filed the instant writ application seeking this Court's supervisory review of the trial court's ruling.

### *Defendant's Writ Application*

4

In his application, defendant argues the trial court erred in its determination that La. C.Cr.P. art. 798(2)(a) and (b) is a law of general applicability, and erred in denying his motion to declare the Article unconstitutional as burdening the free exercise of religion. The determination of the constitutionality of a statute presents a question of law subject to *de novo* review. *State v. Webb*, 13-1681 (La. 5/7/14), 144 So.3d 971, 975.

Louisiana Code of Criminal Procedure article 798, entitled "Causes for challenge by the state," provides, in pertinent part:

> It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
>
> ****
>
> (2)     The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it known:
>
> (a)     That he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him;
>
> (b)     That his attitude toward the death penalty would prevent or substantially impair him from making an impartial decision as a juror in accordance with his instructions and his oath[.]

[Internal footnote added.]

In *State v. Brown*, 16-998 (La. 1/28/22), 347 So.3d 745, 804-04, *cert. denied*, ---U.S.---, 143 S.Ct. 886, 215 L.Ed.2d 404 (2023), the Supreme Court discussed La. C.Cr.P. art. 798(2) as follows:

> The basis of the exclusion under La. C.Cr.P. art. 798(2), which incorporates the standard of *Witherspoon* [*v. State of Ill.*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776], as clarified by *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), is that the juror's views "would prevent or substantially impair him from making an impartial decision as a juror in accordance with his instructions and his oath." *Witt*, 469 U.S. at 424, 105 S.Ct. 844. *Witherspoon* further dictates that a capital defendant's rights under the Sixth and Fourteenth Amendments to an impartial jury prohibits the exclusion

of prospective jurors "simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon*, 391 U.S. at 522, 88 S.Ct. 1770.

A prospective juror whose views would either lead him to vote automatically against the death penalty or would substantially impair his or her ability to follow the instructions of the trial court and consider a sentence of death is not qualified to sit on the jury panel in a capital case. *Witt*, 469 U.S. at 424, 105 S.Ct. 844; La. C.Cr.P. art. 798(2).

In *Fulton*, *supra*, upon which defendant's argument is based, a state-licensed foster care agency affiliated with the Roman Catholic Diocese, together with three foster parents affiliated with the agency, brought a § 1983 action against the city alleging that the city's refusal to contract with the agency unless it agreed to certify same-sex couples as foster parents violated the Free Exercise and Free Speech Clauses of the First Amendment. The U.S. District Court denied the motions for a temporary restraining order and a preliminary injunction filed by the agency and foster parents, and they appealed. The U.S. Third Circuit Court of Appeal affirmed, and certiorari was granted. The U.S. Supreme Court held, among other things, that the city burdened the agency's religious exercise by requiring the agency to choose between curtailing its mission or approving relationships inconsistent with its beliefs, and that the non-discrimination requirement in the city's standard foster care contract was not generally applicable, and thus, was subject to strict scrutiny.

The Louisiana Supreme Court discussed *Fulton*, the Free Exercise Clause, and laws of general applicability, in *State v. Spell*, *supra*:

The First Amendment, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof …*" U.S. Const., Amdt 1 (emphasis added); *Fulton v. City of Philadelphia, Pennsylvania*, ---U.S.---, 141 S.Ct. 1868, 1876, 210 L.Ed.2d 137 (2021). Article I, Section 8 of the Louisiana Constitution similarly provides, "No law shall be enacted respecting an establishment of religion or

6

prohibiting the free exercise thereof." The free exercise of religion means the right to believe and profess whatever religious doctrine one desires.

****

A law that substantially burdens the free exercise of religion violates the First Amendment. *See Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1989)); *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 220, 92 S.Ct. 1526, 1536, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1063). This standard, sometimes called the "*Sherbert* test," was applied by the Supreme Court for almost 30 years to determine whether government action was subject to strict scrutiny under the Free Exercise Clause. In *Smith*,[1] however, the Supreme Court held that, regardless of its burden on religious exercise, a law that is "neutral" and "generally applicable" does not violate the Free Exercise Clause and is not subject to strict scrutiny. *See Smith*, 494 U.S. at 878-80, 110 S.Ct. at 1600. If prohibiting the exercise of religion is "merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." *Smith*, 494 U.S. at 878, 110 S.Ct. at 1600. *Smith* effectively carved out an exception to the *Sherbert* test that allows restrictions on religious liberty that previously may not have survived strict scrutiny. After *Smith*, under the federal jurisprudence, a law burdening religious exercise is subject to strict scrutiny only if it is not neutral and generally applicable. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546, 113 S.Ct. 2217, 2233, 124 L.Ed.2d 472 (1993).

A governmental regulation burdening religious exercise is not neutral and generally applicable if, by granting exemptions, it treats any comparable secular activity more favorably than religious exercise. *See Fulton*, 141 S.Ct. at 1877; *Tandon v. Newsom*, ---U.S.---, 141 S.Ct. 1294, 1296, 209 L.Ed.2d 355 (2021) (*per curiam*); *Roman Catholic Diocese of Brooklyn v. Cuomo*, ---U.S.---, 141 S.Ct. 63, 66-67, 208 L.Ed.2d 206 (2020) (*per curiam*). As *Smith* recognized, a law may violate the Free Exercise Clause and trigger strict scrutiny if "the State has in place a system of individual exemptions" from the law. *Smith*, 494 U.S. at 884, 110 S.Ct. at 1603. If the statute grants exemptions, the government "may not refuse to extend that system to cases of religious hardship without compelling reason." *Smith*, 494 U.S. at

---

[1] *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990).

7

884, 110 S.Ct. at 1603 (internal quotation marks omitted). It is not sufficient for the state to point out that it treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue. *Tandon*, 141 S.Ct. at 1296. Rather, once a state creates any favored class of business, the state must justify why houses of worship are excluded from that favored class. *Roman Catholic Diocese*, 141 S.Ct. at 73 (Kavanaugh, J., concurring); *see also Church of Lukumi*, 508 U.S. at 537, 113 S.Ct. at 2229.

*Spell*, 339 So.3d at 1131-33. [Internal footnote added.]

While our research did not produce a case wherein a Louisiana court specifically addressed whether La. C.Cr.P. art. 798 is a law of general applicability, numerous Louisiana cases have upheld the constitutionality of La. C.Cr.P. art. 798. In *Odenbaugh*, *supra*, the Louisiana Supreme Court addressed whether Louisiana's death qualification process is unconstitutional on the basis that it violates the right to an impartial jury, unfairly leads to a death-prone jury, and denies a fair cross-section of the venire available to non-capital defendants. In upholding the constitutionality of La. C.Cr.P art. 798, the Supreme Court stated:

[T]here should be no question of the constitutional validity of LSA-C.Cr.P. art. 798 since it was drafted to conform to the constitutional requirements set forth in [*Witherspoon*]; *see also*, [*Witt*]. In *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court held that the Constitution does not prohibit excluding potential jurors under *Witherspoon* or that "death qualification" resulted in a more conviction-prone jury. Likewise, this Court has repeatedly rejected the claim that the *Witherspoon* qualification process results in a death-prone jury … This Court finds no need to revisit this longstanding principle of law.

*Odenbaugh*, 82 So.3d at 248-49. [Internal citations omitted].

In *State v. Brown*, *supra*, the defendant raised the constitutionality of the death qualification procedure. During *voir dire*, but after the trial court granted cause challenges of several jurors who expressed religious and moral scruples against the death penalty, the defendant raised objections to La. C.Cr.P. art. 798 and *Witherspoon*. Specifically, defense counsel argued that the defendant was

8

subject to a more onerous standard than was required of the State when it came to challenges under La. C.Cr.P. arts. 797 and 798.  In rejecting the defendant's argument, the Supreme Court stated, "Before this court defendant presents no valid argument as to why the reasoning in *Odenbaugh* does not apply to his case, or why this court's longstanding jurisprudence should be disturbed." *Id.*, 347 So.3d at 804.

In *State v. Turner*, 16-1841 (La. 12/5/18), 263 So.3d 337, *cert. denied*, --- U.S.---, 140 S.Ct. 555, 205 L.Ed.2d 355 (2019), the defendant argued the trial court erred in granting the State's challenge for cause of twenty-three jurors based on La. C.Cr.P. art. 798(2) after they expressed opposition to capital punishment based on religious beliefs.  He argued the State's challenges violated the First Amendment and the Louisiana Religious Freedom Act.  He further claimed that the exclusion of citizens from jury service under La. C.Cr.P. art. 798 due to their religious beliefs improperly burdens the free exercise of religion and that death qualification is unconstitutional because it does not serve any compelling governmental interest that cannot be served by means less burdensome on citizens' free exercise of religion.  As such, the defendant argued that his convictions and death sentence should be reversed to vindicate the rights of these individuals, and because no confidence can be had in a verdict imposed by a jury from which numerous citizens were unlawfully excluded.  The trial court denied the defendant's pre-trial motion, and motion for new trial, based on this issue.  In rejecting the defendant's argument as meritless, the Supreme Court, citing *Odenbaugh*, stated that La. C.Cr.P. art. 798 was drafted to conform to *Witherspoon*.  Additionally, the Supreme Court noted that it had previously rejected challenges to the statute's constitutionality with regard to excluding jurors during death qualification *voir dire*, and determined that La. C.Cr.P. art. 798 did not run afoul of prohibitions against religious discrimination.  *Id* at 395-96

9

(quoting *State v. Sanders*, 93-1 (La. 11/30/94), 648 So.2d 1272, *cert. denied*, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996), and *State v. Robertson*, 97-177 (La. 3/4/98), 712 So.2d 8, 25-26, *cert. denied*, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998) ("It is not the prospective juror's religion *per se* which justifies the challenge for cause but his views on the death penalty, regardless of their source or impetus.").

In *Sanders*, *supra*, the defendant claimed that La. C.Cr.P. art. 798 was unconstitutional on its face. In this case, two veniremen stated that because of their religious beliefs, they could not under any circumstances vote for the death penalty. The trial court thereafter disqualified them. The defendant argued the exclusion of jurors on such grounds violated La. Const. art. I, § 3, which prohibits all discrimination based on religious beliefs. In rejecting the defendant's argument, the Supreme Court found that the defendant had neither argued nor shown that the alleged discrimination the two jurors allegedly suffered actually constituted religious discrimination. Instead, the defendant's inquiry was restricted to the question of whether the veniremen could vote for the death penalty. The Court noted that it had previously held that "the 'single attitude' of opposition to the death penalty 'does not represent the kind of … religious … characteristic that underlies those groups that have been recognized as being distinctive.'" *Id.* at 1287-88 (quoting *State v Lowenfield*, 495 So.2d 1245, 1254 (La. 1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986)). Further, the *Sanders* Court found that if the reluctance to impose the death penalty was religious in nature, it had adopted the *Witherspoon* and *Witt* standards. The Court asserted that on numerous prior occasions, it had reviewed the disqualification of jurors who stated a religious basis for their inability to impose the death penalty and had never found a constitutional violation, and that considering the substantial jurisprudence addressing the issue, the defendant's assignment of error lacked

10

merit. *Id.* at 1288 (citing *State v. Copeland*, 530 So.2d 526 (La. 1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989); *State v. Ward*, 483 So.2d 578 (La. 1986), *cert. denied*, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 168 (1986); and *Lowenfield*, *supra*, 495 So.2d at 1254-55).

After *de novo* consideration of defendant's writ application herein, we find the trial court did not err by denying his motion to declare La. C.Cr.P. art. 798(2)(a) and (b) unconstitutional or to bar the State from challenging jurors with conscientious scruples against the death penalty arising from religious beliefs. Based on the existing jurisprudence upholding the constitutionality of La. C.Cr.P. art. 798, we find that La. C.Cr.P. art. 798(2)(a) and (b) is neutral and generally applicable because (1) it does not focus on a particular religion or religion at all, and (2) it applies to anyone regardless of the source of his or her views on the death penalty. *See Odenbraugh*, *supra*; *Brown*, *supra*; *Turner*, *supra*; *Sanders*, *supra*. For these reasons, the writ is denied.

**WRIT DENIED**

11

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 8, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-K-466

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
DARREN A. ALLEMAND (RESPONDENT)     THOMAS J. BUTLER (RESPONDENT)     ELLIOTT T. BROWN (RELATOR)
RICHARD J. BOURKE (RELATOR)     GRANT L. WILLIS (RESPONDENT)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(RESPONDENT)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053