JAMES F. McKAY III, Chief Judge.
|,STATEMENT OF CASE
On May 11, 2012, the defendant, Darrell Dixon (“defendant”), was charged by bill of information with possession of a firearm by a convicted felon in violation of La. R.S. 14: 95.1. The bill of information provides that the defendant was found in possession of a “rifle” on May 10, 2012, and had previously been convicted of simple burglary in Case No. 495-690 in Section “D” of the Criminal District Court for the Parish of Orleans.
The defendant appeared for arraignment on June 4, 2012, and entered a plea of not guilty. The defendant subsequently filed a motion to suppress and motion for preliminary hearing. On July 21, 2012, the trial court denied the motion to suppress and found probable cause to substantiate the charge.
On February 1, 2013, the defendant filed a motion to quash the bill of information and declare La. R.S. 14:95.1 unconstitutional based on the 2012 ^amendment to Article 1, Section 11 of the Louisiana Constitution.[1] The State filed an opposition to *664 the motion to quash on February 19, 2013. The same date, the trial court heard and granted the defendant’s motion to quash the bill of information. The trial court stated:
I don’t want to hold — I don’t think that the statute, per [se], is unconstitutional in every set of circumstances. But, I think the Louisiana population added that language to that amendment, and I think that you have a nonviolent crime here. It was a non-violent crime. It is not in fourteen two.[2] It is a non-violent crime. It was a burglary of an automobile that belonged to the city, and then he has a gun. I think the Eighth Amendment of the U.S. Constitution talks about the penalty having to fit the crime. I have never liked the overreaching of these things anyhow, but I think in this case, this case specifically, it is case specific, and not the stature as a whole, but I will grant the Motion to Quash in this case.
[[Image here]]
But, I want the Court of Appeal or whoever reviews this to understand that it is case specific because of the language in that amendment and not the statute in general. I am not quashing the entire statute, but I am looking at that language, you know, and that language indicates to me strict scrutiny. I am giving it strict scrutiny on an individual case basis and not the statute as a whole.
On February 21, 2013, the trial court further clarified that its decision to quash the bill of information was based the interpretation of the law as applied to the specific | .¡facts of the case. The trial court stated:
As to Darrel Dixon, I quashed the Bill of Information in that case and it was a 95.1, but I am not contesting the constitutionality of the 95.1_
As the amendment to the Louisiana Constitution added specific language, I am interpreting that language to meet these set of facts, and these set of facts only. And that’s why I quashed it. Not any other reason.
On April 22, 2013, the State filed a motion to stay the appeal pending the Louisiana Supreme Court’s decision in State v. Draughter[3], which was on direct appeal from a trial court’s ruling that La. R.S. 14:95.1 was unconstitutional on its face. This Court granted the State’s motion, stayed the matter, and ordered that the State notify the Court in writing of the Louisiana Supreme Court’s disposition in Draughter within seven days of its issuance.
On December 11, 2013, the State timely notified this Court that the Louisiana Supreme Court had reached a decision in Draughter and included a copy of the opinion. On December 23, 2013, this Court *665 was advised by the Clerk of Criminal District Court that no pleadings were located in the record regarding the motion to quash. On December 26, 2013, this Court lifted the stay and issued notice advising the parties that the record was complete.
STATEMENT OF FACT
The facts of the underlying offense are limited to testimony adduced at the preliminary hearing.
Officer Edwin Patrick (“Officer Patrick”) testified that he was working for the Sixth District of the New Orleans Police Department on May 10, 2012. He stated that he and his partner, Officer John Waterman, were patrolling in the 2800 14block of Danneel Street in a marked police vehicle when he observed three black males in an empty lot next to 2840 Dan-neel Street. Officer Patrick testified that the three subjects were standing behind a gray Toyota attempting to get in the vehicle. He observed that one of the subjects, identified in open court as the defendant, was holding what appeared to be a gun in his right hand close to his waist in the attempt to conceal it. When defendant noticed the officers, he threw the gun under the back of the vehicle. Officer Patrick and his partner immediately stopped their vehicle and approached the suspects. Officer Patrick stated that they placed all three subjects in handcuffs for officer safety. Officer Patrick testified that he recovered a “fully loaded” “twenty-two caliber submachine gun” under the Toyota. After running a check on the defendant’s name, Officer Patrick discovered the defendant had a previous arrest for illegal carrying of a weapon. The name search did not, however, show that he had been convicted of that offense.
On cross-examination, Officer Patrick estimated that he was ten feet away from the defendant when he observed the gun in defendant’s possession. He stated he believed he had previous “run-ins” with defendant but had never arrested the defendant before May 10, 2012. Officer Patrick testified that he wears corrective lenses every day and could clearly see within at least ten feet. He stated that the twenty-two caliber weapon found at the scene was “sort of like a handgun with ... an extended clip.” Officer Patrick stated he initially stopped the defendant for a “signal 107,” police department code for “suspicious person,” but arrested the defendant for illegal carry of a weapon.[4] He admitted that the gun was not reported stolen. Officer Patrick also admitted that he did not finger print the gun or call | fjCrime Lab to the scene, but explained he felt it was unnecessary considering he observed the defendant with the gun. Officer Patrick testified that a search incident to the defendant’s arrest did not reveal any additional evidence. He stated that one of individuals with the defendant was previously arrested for illegal carrying of a handgun and had two warrants out for his arrest. Officer Patrick testified that he learned from nearby residents that neither the defendant nor the other two suspects lived at the home next to the empty lot.
After Officer Patrick’s testimony, the State offered a certified copy from the Orleans Parish Criminal District Court Clerk’s Office of the defendant’s prior conviction for simple burglary into evidence. These documents contain: a bill of information dated March 22, 2010, charging the defendant with “simple burglary of a vehicle,” namely, a “2009 Kia Borrego belonging to the City of New Orleans”; a guilty plea form dated June 30, 2010; the docket *666 master; minute entries; a screening action form; and an arrest register in Case No. 495-690. The minute entry of June 30, 2010 provides that the defendant was sentenced to five years, suspended, with two years active probation and three years inactive probation. The minute entry of February 3, 2012 provides that the trial court terminated the defendant’s probation satisfactorily.
DISCUSSION
STANDARD OF REVIEW
Although a trial court’s ruling on a motion to quash will generally not be reversed absent an abuse of discretion, a trial court’s legal findings are subject to a de novo standard of review. State v. Hall, 2013-0453, p. 11 (La.App. 4 Cir. 10/09/13), 127 So.3d 30, 39-39 (citing State v. Batiste, 2005-1571, p. 9 (La.10/17/06), 939 So.2d 1245, 1251; State v. Smith, 99-0606, p. 3 (La.7/6/00), 766 So.2d 501, 504. The interpretation of a constitutional issue of law is reviewed de novo. Id. In reviewing rulings on motions to quash where there are mixed questions of fact as well as law, a trial judge’s ruling on a motion to quash is discretionary and should not be disturbed absent a clear abuse of discretion. State v. Sorden, 2009-1416, p. 3 (La. 4 Cir. 8/4/10), 45 So.3d 181, 183; State v. Tran, 2012-1219, p. 2 (La.App. 4 Cir. 4/24/13), 115 So.3d 672, 673, n. 3).[5]
Here, the trial court’s decision to quash the bill of information was based on its interpretation of the 2012 amendment to La. Const. Art. 1, § 11 and La. R.S. |714:95.1, as applied to the defendant and the specific facts of case, and thus involved mixed questions of law and fact.
As the parties do not contest that the defendant was in possession of a firearm or that the defendant had a prior nonviolent felony conviction, arguably the trial court did not make findings of fact but relied on the uncontroverted evidence in reaching its decision. Moreover, the Louisiana Supreme Court reviewed “as ap *667 plied” constitutional challenges under the de novo standard of review. See, State v. Draughter, 2013-0914, p. 4, 130 So.3d at 860 (reviewing the defendant’s facial and as applied challenge to La. R.S. 14:95.1 de novo ).[6]
ASSIGNMENT OF ERROR NUMBER 1
As its sole assignment of error, the State argues that the trial court erred when “it found that Louisiana’s felon disposition statute [La. R.S. 14:95.1] is unconstitutional as applied to an individual recently convicted of simple burglary and arrested while in possession of a fully-loaded sub-machine gun while loitering in an abandoned lot.”
As noted above, it is undisputed that the defendant was previously convicted of simple burglary and that the defendant was in possession of a firearm prior to his arrest. See, La. R.S. 14:95.1(D) (defining “firearm” as “any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive”).
lsThe bill of information charged the defendant for being in possession of a rifle. Officer Patrick testified at the preliminary hearing that the firearm at issue was a “twenty-two caliber submachine gun” and “sort of like a handgun with kind of an extended clip.” The docket master and minute entry of February 19, 2013, however, stated that the State filed a “handgun with 25 rounds magazine and 25 live rounds” into evidence with Clerk’s office. The defendant also alleges in his opposition brief that Officer Patrick misperceived the weapon the defendant was handling and that the firearm was an “Intratec Cal. 22LR,” a semi-automatic pistol, not a sub-machine gun. There is jurisprudence in the Second Circuit describing a “.22 caliber Intratec” as a “semi-automatic pistol.” See, State v. Ruffins, 41,033, p. 2 (La.App. 2 Cir. 9/20/06), 940 So.2d 45, 48. We note there is nothing in the record confirming the make , and/or model of the firearm.
Louisiana first made it illegal for felons convicted of certain crimes to possess a firearm in 1975. See, Acts 1975, No. 492, § 2. In 1980, the Louisiana Legislature amended La. R.S. 14:95.1 to add additional crimes to the list of enumerated felony convictions. See, Acts 1980, No. 279, § 1; State v. Wiggins, 2013-0649 (La.App. 1 Cir. 1/31/14) 139 So.3d 1, 4-5. The statute currently provides:
A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law1 which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to | ncommit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country *668 of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.
[[Image here]]
C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
D. For the purposes of this Section, “firearm” means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.
Previously, the Louisiana Supreme Court upheld the constitutionality of this statute in State v. Amos, 343 So.2d 166, 168 (La.1977). The Amos Court found that “The right to bear arms, like other rights guaranteed by our State Constitution, is not absolute. We have recognized that such rights may be regulated in order to protect the public health, safety, morals or general welfare so long as that regulation is a reasonable one.” Id.
However, in 2012, the Louisiana legislature amended Article 1, Section 11 of the Louisiana Constitution. See, Acts 2012, No. 874, § 1. Before its recent amendment, Article 1, Section 11 provided: “The right of each citizen to keep and bear arms shall not be abridged, but this provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.” After the 2012 amendment, Article 1, Section 11 provides that: “The right of each citizen to keep | inand bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.”[7] La. Const. art. I, § 11.
The Court in Draughter, 2013-0914, p. 10,130 So.3d at 863, after analyzing recent United States Supreme Court decisions[8] and the intent of the Louisiana legislature in amending the constitutional provision concluded that “the right to bear arms was always fundamental.” It further found that 2012 amendment to Article 1, Section 11 “merely sought to ensure that the review standard of an alleged infringement of this fundamental right was in keeping with the refinements made to constitutional analysis which developed since our decision in Amos.” Draughter, 2013-0914, at pp. 9-10 at 863-864 (citing Hondroulis v. Schuhmacher, 553 So.2d 398, 415 (La.1988) (government action imposing a burden on a fundamental right may be justified only by a compelling state interest, narrowly confined so as to further that compelling interest, i.e. strict scrutiny); and Carey v. Population Services Intern., 431 U.S. 678, *669 686, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977) (same)).
As noted above, Amos found that La. R.S. 14:95.1 did not contravene the right to bear arms guaranteed in former Article 1, Section 11 of the Louisiana Constitution because it was reasonable regulation to protect the public welfare. Amos, 843 So.2d at 168. In Draughter, the Court observed that at the time Amos |nwas decided in 1977, the reasonableness standard was consistent with the appellate review of other alleged infringements of constitutional rights. Draughter, 2013-0914, pp. 7-9,130 So.3d at 862-863. The Louisiana Supreme Court held, however, that under the current language of Article 1, Section 11, an alleged infringement on the right to bear arms is now subject to strict scrutiny. “Under strict scrutiny the government bears the burden of proving the constitutionality of the regulation by showing (1) that the regulation serves a compelling governmental interest, and (2) that the regulation is narrowly tailored to serve that compelling interest.” Id. at p. 8, 130 So.3d at 862 (quoting In re Warner, 2005-1303, p. 37 (La.4/17/09); 21 So.3d 218, 246).
In the present case, because of the 2012 amendment and the Louisiana Supreme Court’s pronouncement in Draughter, the analysis of La. R.S. 14:95.1 as applied to the defendant is subject to strict scrutiny.[9]
 Where strict judicial scrutiny is required, a state “is not entitled to the usual presumption of validity, the state rather than the complainant must carry a heavy burden of justification, the state must demonstrate its [legislation] has been structured with precision, and is tailored narrowly to serve legitimate objectives, and that it has selected the less drastic means for effectuating its objectives.” State in Interest of J.M., 2013-1717, (La.1/28/14), 144 So.3d 853, 860 (citing Southland Corp. v. Collector of Revenue for Louisiana, 321 So.2d 501, 505 (La.1975); State v. Brenan, 99-2291, p. 6 (La.5/16/00); 772 So.2d 64, 69; Warner, 2005-1303, p. 37; 21 So.3d at 246). “Strict scrutiny requires a careful examination by our courts, keeping in mind that the fundamental right at issue [the right to keep and bear arms] is one where some degree of regulation is likely to be necessary to protect the public safety.” J.M., 2013-1717, 144 So.3d at 860; (citing Grutter v. Bollinger, 539 U.S. 306, 327, 123 S.Ct. 2325, 2338,156 L.Ed.2d 304 (2003)).
In Draughter, the Louisiana Supreme Court found that La. R.S. 14:95.1 passed strict scrutiny review and did not unconstitutionally infringe upon the right of a defendant still under state supervision as a probationer or parolee to possess a firearm. The defendant in Draughter had previously pled guilty for attempted simple burglary in February 2011 and was sentenced to two years at hard labor, suspended, with two years of active probation. A year and two months later, while the defendant was still on probation, he was arrested and charged with being a felon in possession of a firearm in April 2012. The defendant moved to quash the bill of information, arguing La. R.S. 14:95.1 violated the 2012 amendment to La. Const. art. I, § 11. The trial court granted the motion, finding that that the felon in possession of *670 a firearm statute was “facially unconstitutional, in its entirety.” Id. at p. 4, 130 So.3d at 859. The matter proceeded to the Louisiana Supreme Court on direct appeal.
On appeal, the Louisiana Supreme Court narrowed the scope of its inquiry based on the defendant’s standing. The Draughter Court found that because the defendant was on probation at the time of the offense and a parolee, the Court’s review was limited to “whether a convicted felon, who remains under state custody and supervision, may assert a constitutional right to bear arms, the infringement of which is subject to strict scrutiny review.” Draughter, 2013-0914, p. 14,13011RSo.3d at 866. The Draughter Court found that the government has a compelling interest in restricting the right of a convicted felon, still serving a portion of a criminal sentence under state supervision, to bear arms, and the statute was narrowly tailored to advance the state’s interest. Id. at p. 17, 130 So.2d at 868. As a result, the Louisiana Supreme Court reversed the trial court’s ruling, finding that the right to bear arms did not extend to the defendant, who remained under state supervision as a probationer or parolee. Id. The Draughter Court stated, in pertinent part:
As a probationer or parolee, Draughter was still serving a portion of the sentence which he received for violation of a criminal law serious enough to be categorized as a felony. Although speaking specifically of inmates in a custodial setting, the following Supreme Court characterization applies equally to those convicted felons who are serving sentences of probation and parole as they ... have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.
Hudson [v. Palmer], 468 U.S. [517, 526], 104 S.Ct. [3194, 3200, 82 L.Ed.2d 393 (1984) ]
By necessity, the state must exercise continuing supervision and control over these convicted felons as they complete the punishments which have been meted out for their criminal activity.
For these persons still under state supervision, we easily find there to be a compelling state interest for the state’s limited infringement of even fundamental constitutional rights, including the right to possess a firearm. These persons are still serving a portion of a criminal sentence. There will necessarily be intrusion into their lives by state actors administering the supervision required by their status. The possession of a firearm is inconsistent with that status and would subject the individuals tasked with their supervision to an untenable safety risk.13 As this court found in Amos, the felon in possession statute: |14... was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity.
Id., 343 So.2d at 168. The governmental interest served by this statute as applied to persons under the state’s supervision and control may be described as an interest of the “highest order.” See Warner, 2005-1303, p. 46; 21 So.3d at 252. Having found the statute serves a compelling governmental interest as applied to a person still under state supervision, we find La. R.S. 14:95.1 also satisfies the *671 requirement that it be narrowly tailored to serve that compelling interest. The statute at issue actually advances the state’s interest in preventing persons under state supervision from possessing firearms. This rule is reasonably necessary and is the least restrictive means to serve and further the state’s interest. Because of the defendant’s status as a person under state supervision, the precise parameters of whether the statute is under-inclusive or over-inclusive in other factual settings cannot be fully explored. Warner, 2005-1303, pp. 47-50; 21 So.3d at 252-254.
Finding both a compelling state interest in the state’s regulation of a convicted felon still under the state’s supervision in La. R.S. 14:95.1 and that the statute is narrowly tailored to achieve that interest, we hold La. R.S. 14:95.1 survives strict scrutiny and is not an unconstitutional infringement of Draughter’s right to bear arms under article I, section 11, as applied to the narrow fact situation before us today.
Draughter, 2013-0914, p. 16-17, 130 So.3d at 867-868.
In State in Interest of J.M., 2013-1717, (La.1/28/14), 144 So.3d 853, the Louisiana Supreme Court addressed the constitutionality of La. R.S. 14:95.8, which prohibits the possession of a handgun by a juvenile, and La. R.S. 14:95(A)(1), which prohibits the intentional concealment of a weapon on one’s person. The juvenile defendant challenged the constitutionality of both statutes under the 2012 constitutional amendment, asserting that they failed to pass 1 ^strict scrutiny. The juvenile court found a compelling state interest for both statutes, but determined La. R.S. 14:95(A)(1) was not narrowly tailored and was thus unconstitutional as it relates to juveniles. After severing Sections C(4-7) from La. R.S. 14:95.8, the juvenile court found La. R.S. 14:95.8 was narrowly tailored to serve a compelling governmental interest. The state sought direct review of the juvenile court’s declaration of the unconstitutionality of La. R.S. 14:95(A)(1) as applied to juveniles and direct review of the juvenile court’s ruling insofar as it found La. R.S. 14:95.8(C)(4-7) unconstitutional and severed those portions of the statute from La. R.S. 14:95.8. The juvenile also applied for writs directly to Supreme Court to consider the underlying constitutionality of La. R.S. 14:95.8 with the state’s appeal. The matters were consolidated.
The Supreme Court found that La. R.S. 14:95.8 is in fact narrowly tailored to the compelling state interest of public safety. The Court noted that because juveniles exhibit a “lack of maturity, impetuosity, suggestibility and vulnerability” the possession of a handgun is a particular danger to himself as well as to society. J.M., 144 So.3d at 861. The Court also found the statute to be narrowly tailored because it only restricts the possession of handguns rather than all firearms; it only applies to those sixteen and younger; and it allows seven exceptions under which a juvenile can lawfully possess a handgun. The JM Court thus found La. R.S. 14:95.8 to withstand strict scrutiny review and reversed the juvenile court’s ruling which severed Section C(4-7) from La. R.S. 14:95.8.
Similarly, the Supreme Court held La. R.S 14:95(A)(1) passed strict scrutiny, and further found La. R.S. 14:95(A)(1) narrowly drawn to achieve a public safety interest, noting that Louisiana law prohibits the intentional [ 16concealment of weapons without a permit but allows a citizen to carry a concealed weapon with a proper permit.
In State v. Webb, 2013-1681 (La.5/7/14), 144 So.3d 971, the Louisiana Supreme Court found that La. R.S. 14:95(E), a statute which prohibits the simultaneous possession of illegal drugs and firearms, did *672 not infringe the right to keep and bear arms. The defendant in Webb was found in possession of a marijuana “blunt” and a legally purchased handgun. The defendant was subsequently arrested and charged with violating La. R.S. 14:95(E). The defendant was not charged with misdemeanor possession of marijuana and had no prior felony convictions.
After the trial court denied the defendant’s motion to quash the bill of information, the defendant filed writs with this Court, arguing that La. R.S. 14:95(E) unconstitutional in light of the recent constitutional amendment. This Court, pursuant to the State’s motion to stay appeal, declined to exercise supervisory review, as Draughter was pending before the Supreme Court. Because the 2012 constitutional amendment generated substantial litigation, to provide guidance the Louisiana Supreme Court granted writs to address the constitutionality of La. R.S. 14:95(E).
The Louisiana Supreme Court found the state has a compelling interest in restricting simultaneous possession of illegal drugs and firearms to curtail drug trafficking and promote public safety. The Webb Court noted the legislature’s intent in enacting La. R.S. 14:95(E) was “to prevent those engaged in drug use and distribution from engaging in the violent behavior endemic to the drug trade” and the connection between illegal drugs and gun violence. Webb, 2013-1681, 144 So.3d at 979 (citing State v. Blanchard, 99-3439, p. 3, (La.1/18/01), 776 So.2d 1165, 1169-1170; Smith v. U.S., 508 U.S. 223, 240, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)). The Louisiana Supreme Court further found that the firearm possession element in La. R.S. 14:95(E) was not really a restriction on the right to bear arms in the typical sense, but rather operates as an enhancing factor, and by possessing a firearm while in possession of an illegal drug, a misdemeanor crime, such as simple marijuana possession, is enhanced to a felony. The Webb Court thus held that when a person is engaged in the unlawful conduct of possessing illegal drugs, that person qualifies his right to engage in what would otherwise be the exercise of the fundamental right to bear arms and legitimate possession of a firearm. Webb, 2013-1681, 144 So.3d at 982-983; Jones v. Helms, 452 U.S. 412, 420, 101 S.Ct. 2434, 2440-2441, 69 L.Ed.2d 118 (1981) (parent’s own misconduct in abandoning his child qualified his right to travel interstate). As a result, the Louisiana Supreme Court found that La. R.S. 14:95(E) was narrowly tailored to serve the state’s interest.[10] Accordingly, the Court concluded there is no unconstitutional deprivation of the right to bear arms under the circumstances and affirmed the trial court’s denial of the motion to quash.
Here, unlike in Draughter, the defendant was not on probation at the time he committed the charged offense in May of 2012. Although the defendant was sentenced to five years’ probation for simple burglary on June 20, 2010, after approximately nineteen months, the trial court terminated the defendant’s probation satisfactorily on February 3, 2012. Because the defendant was no longer 11sserving a portion of his sentence or under the state’s supervision, the compelling state interests for necessary governmental intrusion articulated in Draughter are inapplicable. *673 Moreover, contrary to Webb, the defendant was not in possession of an illegal drug while he was in possession of the firearm and thus does not involve the concern for the drug related violence or public safety interests associated with drug trafficking. Notably, however, the Webb Court found La. R.S. 14:95(E), the statute prohibiting simultaneous illegal drug and gun possession, satisfied strict scrutiny review despite that the defendant in Webb had no prior felony convictions and legally purchased the gun. Thus, the fact that the defendant’s underlying felony is non-violent is not necessarily fatal in finding a compelling a state interest in restricting the defendant’s access to use and possess a firearm.
The Louisiana Supreme Court has recognized that La. R.S. 14:95.1 was enacted in 1975 for the purpose of and in an effort to ensure safety of the public from “persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity.” Draughter, 2013-0914, pp. 5, 16-17, 130 So.3d at 860, 867 (citing Amos, 343 So.2d at 168).
In the instant case, the record shows that on January 19, 2011, the defendant committed simple burglary of a Kia Borrego owned by the city. Although the defendant’s prior felony was not a crime of violence as defined by La. R.S. 14:2(B), by burglarizing a city-owned vehicle the defendant has shown an apparent disregard for the law and the rights of others.[11] See, United States v. Everist, 368 F.3d 517, 519 (5th Cir.2004) (stating “[i]rrespective of whether his offense was |19violent in nature, a felon has shown manifest disregard for the rights of others” and “may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens”). Moreover, the record provides that approximately three months after the defendant’s probation was terminated, he possessed a firearm and according to the Officer Patrick “attempted to get in” a car with two other men in an empty lot. Officer Patrick also testified the defendant was holding the gun close to his waistband “attempting to conceal it,” and when the defendant observed the officer he threw the gun under the vehicle. Although the parties disagree as to the type of firearm found in the defendant’s possession, it is undisputed that the weapon was twenty-two caliber and fully loaded. Additionally, because of his prior felony conviction, the defendant likely employed some unlawful means to obtain the weapon at issue. See, Webb, 2013-1681, 144 So.3d at 979 (noting that possessing marijuana is illegal and that the defendant must have engaged in unlawful methods to obtain the drug). Officer Patrick further stated a database search revealed that the defendant was previously arrested for illegal carrying of a weapon. Considering the prior felony conviction and the circumstances surrounding the arrest for the instant offense, the defendant has shown that he poses more of a heightened risk to public safety than a law abiding citizen. As such, the state has a compelling interest in limiting the defendant’s access to a firearm.
Further, as the defendant was found in possession of a submachine gun, as argued by the State and testified to by Officer Patrick, we find a compelling state interest for public safety as La. R.S. 40:1752 prohibits any person, excluding certain *674 enumerated exceptions, from possessing or keeping a machine gun or a sub-machine gun in Louisiana. See, La. R.S. 40:1751 (defining machine guns as |¡>n“all firearms of any caliber, commonly known as machine rifles, machine guns, and sub-machine guns, capable of automatically discharging more than eight cartridges successively without reloading, in which the ammunition is fed to the gun from or by means of clips, disks, belts, or some other separable mechanical device”).
The next issue is whether La. R.S. 14:95.1 is narrowly tailored to serve the state’s interest in safeguarding the public. Whether a law is “precisely drawn or narrowly tailored” examines the “tightness of fit between the regulation and the state interest.” Webb, 2013-1681, 144 So.3d at 980 (quoting Warner, 2005-1303, p. 47-48, 21 So.3d at 253). A narrowly tailored rule must actually advance the interest ■ asserted. Warner, 2005-1303, p. 48, 21 So.3d at 253.
The Louisiana Supreme Court’s analysis in Webb is helpful in this regard. The Webb Court i'eeognized that although the right to bear arms is a fundamental right, the defendant qualified his ability to exercise that right by possessing an illegal drug. Thus, it was the defendant’s possession of drugs that made his possession of a firearm unlawful under La. R.S. 14:95(E). As a result, the Webb Court found La. R.S. 14:95(E) was narrowly tailored to achieve the state’s compelling interest for public safety.
Here, under La. R.S. 19:95.1, it is not the possession of a firearm alone that is a felony; possession a firearm is made a felony only when the person committing the act has previously been convicted of one of the enumerated felony offenses. See, State v. Williams, 358 So.2d 943, 946 (La.1978) (the conduct proscribed by La. R.S. 14:95.1 is dependent upon the circumstance of an earlier conviction); State v. Wiggins, 2013-0649 (La.App. 1 Cir. 1/31/14) 139 So.3d 1, 8 (the act of possessing or concealing a weapon becomes a felony |2]OnIy because the offender has the status of a convicted felon). Therefore, like the defendant in Webb, by committing and being convicted of simple burglary, an enumerated felony, the defendant qualified his right to otherwise lawfully possess a firearm. Moreover, La. R.S. 14:95.1 limits it application to certain specified felony offenses and includes a time limit of ten years from the date the sentence is completed for the applicability of the firearm ban. The statute also defines what constitutes a firearm. By targeting criminals who have shown a proclivity for disregarding the law and intruding on rights of others and by placing a ten year limit on the applicability, La. R.S. 19:95.1 advances the state’s interest in safeguarding the public from those who pose a threat to society. See, Wiggins, 2013-0649, 139 So.3d 1 at 8 (finding the felon in possession of firearm statute narrowly tailored despite the defendant’s prior non-violent conviction for simple burglary of an inhabited dwelling when the defendant subsequently possessed a firearm and used it in the attempt to kill, demonstrating a dangerous disregard for the law).
Moreover, as noted by the Louisiana Supreme Court, the voters’ ratification of strict scrutiny as a review standard of alleged infringements on the right to keep and bear arms was not meant to invalidate every restriction on firearms. J.M., 2013-1717, 144 So.3d at 860. The legislature’s intention was to “secure a continued individual right to bear arms by Louisiana citizens under the Louisiana Constitution, protected from possible future judicial or legislative erosion” Draughter, 2013-0914, p. 7, 130 So.3d at 861. The Supreme Court thus concluded that “the right bear
*675 to arms has always been a fundamental right," and the amendment to the constitutional provision merely sought to ensure that the review standard of an alleged infringement of this fundamental right was consistent withJ~developing standards of constitutional analysis. Id. at p. 10, 130 So.3d at 863. The restrictions imposed on firearm possession by La. R.S. 14:95.1 for convicted felons do not fall `within the scope of liberties that the 2012 amendment to Article 1, Section 11 of the Louisiana Constitution was enacted or ratified to protect. See, Webb, 2013-1681, 144 So.3d at 978, 983 (stating that "Strict scrutiny is the most rigorous test for determining whether a law is constitutional. Laws restricting fundamental rights are subject to strict scrutiny because they are considered to be so essential to the structure of our society, in which citizens enjoy `ordered liberty;" and finding that nothing in La. Const. art. I § 1 suggests that "the electorate, whose intent is ultimately the intent that governs, believed that possessing firearms with illegal drugs meets the electorate's expectations of a society whose hallmark is ordered liberty.") As such, the right to bear arms does not extend to the defendant as a convicted felon.
Based on the foregoing, La. R.S. 14: 95.1, does not unconstitutionally infringe on the defendant's right to bear arms. The defendant is a convicted felon who has shown an indifference to the laws of the State and disrespect for the property of others. The State has a compelling interest in keeping guns out of the hands of convicted felons to protect the public, and La. R.S. 14:95.1 is tailored to achieve that interest as it regulates the possession and use of firearms by persons convicted of certain felonies for a specific time period. Moreover, it is the defendant's own actions, i.e., past felony conviction, that restricts his ability to exercise his fundamental right and lawfully possess a firearm.
Accordingly, the trial court erred in granting the motion to quash and finding La. R.S. 14:95.1 unconstitutional as applied to the defendant.
j~CONCLUSION
For the aforementioned reasons, we reverse the trial court's ruling, which granted the defendant's motion to quash the bill of information and found that La. R.S. 14:95.1 was unconstitutional as applied to the defendant.
REVERSED.

. Before its recent amendment, Article 1, Section 11 of the Louisiana Constitution provided: “The right of each citizen to keep and bear arms shall not be abridged, but this *664 provision shall not prevent the passage of laws to prohibit the carrying of weapons concealed on the person.” After the 2012 amendment, Article 1, Section 11 provides that: "The right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.” The effective date of this new amendment was December 10, 2012.

. The trial court is referencing La. R.S. 14:2(B), which defines a "crime of violence” as an “an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon.” The statute also lists forty-four offenses as crimes of violence. Simple burglary, however, is not one of the enumerated offenses.

. State v. Draughter, 2013-0914 (La. 12/10/13), 130 So.3d 855.

. Officer Patrick testified that during the arrest he "changed the signal to a 95.”; see, La. R.S. 14:95 (prohibiting the illegal carrying of weapons).

. In State v. Gregory, 2013-1593, pp. 6-7 (La.App. 4 Cir. 3/5/14), 137 So.3d 663, 668 this Court established a guideline for reviewing a trial court’s ruling based on mixed questions of law and fact. The Gregory Court stated:
Our review to determine whether a trial judge abused her discretion in ruling on this mixed question of law and fact requires us to examine both her findings of fact and her choice of law to be applied to those facts. First, in reviewing a trial judge’s findings of fact, we are extremely deferential and "will 'not overturn those findings unless there is no evidence to support’ ” them. State v. McClendon, 13-1454, p. 6 (La.App. 4 Cir. 1/30/14), 133 So.3d 239, 245, writ denied 14-0324 (La.2/19/14), 133 So.3d 667 (quoting State v. Wells, 08-2262, p. 4 (La.7/6/10), 45 So.3d 577, 580). "This extremely heightened deference is rooted in the limitations of our appellate jurisdiction set forth in La. Const, art. 5, § 10(B), which provides: 'In criminal cases, [an appellate court's] jurisdiction extends only to questions of law.’ ’’ Id.
Second, we review whether the trial judge’s choice and application of law were proper. A trial judge necessarily abuses her discretion in denying a motion to quash if her ruling is based on an erroneous view of the law. See State v. Hayes, 10-1538, p. 11 (La.App. 4 Cir. 9/1/11), 75 So.3d 8, 15 (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); United States v. Taylor, 487 U.S. 326, 336, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) (Noting that "discretionary choices are not left to a court’s inclination, but to its judgment,’’ which is guided by sound legal principles)). If a trial judge in exercising her discretion "bases [her] ruling upon an erroneous view or application of the law, [her] ruling is not entitled to our deference.” State v. Dillon, 11-0188, p. 4 (La.App. 4 Cir. 8/24/11), 72 So.3d 473, 476. Thus, if we find that the trial judge improperly applied or stated the law, we will adopt the trial judge’s findings of fact, provided that they are supported by any evidence, and apply those facts to the proper legal principles.

. It is important to note, however, that the trial court in Draughter granted the motion to quash on the grounds that the felon in possession of a firearm statute was “facially unconstitutional, in its entirety” and thus did not making factual findings. Draughter, 2013-0914, p. 4, 130 So.3d at 859.

. The effective date of the amendment is December 10, 2012. See, Draughter, 2013-0914, p. 7-8, 130 So.3d at 862.

. See, District of Columbia v. Heller, 554 U.S. 570, 635, 128 S.Ct. 2783, 2821-22, 171 L.Ed.2d 637 (2008), (holding that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense and struck down a District of Columbia law that banned the possession of handguns in the home); McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 3042, 177 L.Ed.2d 894 (2010) (noting that a majority of the States in 1868 recognized the right to keep and bear arms as being among the foundational rights necessary to our system of government, and the framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty).

. Although the defendant committed the offense on May 10, 2012, prior to the effective date of the amendment, because his criminal case was pending at the time of the effective date, the amendment has retroactive effect and applies to this case. See, State v. Draughter, 2013-0914, p. 11, 130 So.3d at 864 (noting that while generally legislation has prospective effect from its effective date, it found that the constitutional amendment had retroactive effect to all cases pending on direct review or not yet final).

. The Court also noted La. R.S. 14:95(E) causes the least interference possible to the right to bear and keep arms because not every instance of firearm possession is an enhancement of criminal conduct. Webb, 2013-1681, 144 So.3d at 982; Blanchard, 99-3439 at 9, 776 So.2d at 1173 (describing instances where constructive possession of a firearm has no nexus to illegal drugs).

. The record does not contain the details of the prior offense; it is thus unclear what type of felony or theft the defendant intended to commit therein.